632 A.2d 797

**Raymond Lennard GARNETT**

v.

**STATE of Maryland.**

**No. 3 Sept. Term, 1993.**

Court of Appeals of Maryland.

Nov. 12, 1993.

572

Michael R. Braudes, Asst. Public Defender (Stephen E. Harris, Public Defender) both on brief, Baltimore, for appellant.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen.), both on brief, Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

MURPHY, Chief Judge.

Maryland's "statutory rape" law prohibiting sexual intercourse with an underage person is codified in Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 463, which reads in full:

"Second degree rape.

(a) *What constitutes.*—A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person:

(1) By force or threat of force against the will and without the consent of the other person; or

(2) Who is mentally defective, mentally incapacitated, or physically helpless, and the person performing the act knows or should reasonably know the other person is mentally defective, mentally incapacitated, or physically helpless; or

(3) Who is under 14 years of age and the person performing the act is at least four years older than the victim.

(b) *Penalty.*—Any person violating the provisions of this section is guilty of a felony and upon conviction is subject to imprisonment for a period of not more than 20 years."

Subsection (a)(3) represents the current version of a statutory provision dating back to the first comprehensive codification of the criminal law by the Legislature in 1809.[1] Now we consider whether under the present statute, the State must prove that a defendant knew the complaining witness was younger than 14 and, in a related question, whether it was error at trial to exclude evidence that he had been told, and believed, that she was 16 years old.

I

Raymond Lennard Garnett is a young retarded man. At the time of the incident in question he was 20 years old. He has an I.Q. of 52. His guidance counselor from the Montgomery County public school system, Cynthia Parker, described him as a mildly retarded person who read on the third-grade level, did arithmetic on the 5th-grade level, and interacted with others socially at school at the level of someone 11 or 12 years of age. Ms. Parker added that Raymond attended special education classes and for at least one period of time was educated at home when he was afraid to return to school due to his classmates' taunting. Because he could not understand the duties of the jobs given him, he failed to complete vocational assignments; he sometimes lost his way to work. As Raymond was unable to pass any of the State's functional

---

1. "If any person shall carnally know and abuse any woman-child under the age of ten years, every such carnal knowledge shall be deemed felony, and the offender, being convicted thereof, shall, at the discretion of the court, suffer death by hanging ... or undergo a confinement in the penitentiary for a period not less than one year nor more than twenty-one years." Ch. 138, Sec. 4, 7th. (1809) compiled in 1 Dorsey's *General Public Statutory Law and Public Local Law of the State of Maryland* 575 (1840). The minimum age of the child was raised from 10 years to 14 years in Chapter 410 of the Acts of 1890.

tests required for graduation, he received only a certificate of attendance rather than a high-school diploma.

In November or December 1990, a friend introduced Raymond to Erica Frazier, then aged 13; the two subsequently talked occasionally by telephone. On February 28, 1991, Raymond, apparently wishing to call for a ride home, approached the girl's house at about nine o'clock in the evening. Erica opened her bedroom window, through which Raymond entered; he testified that "she just told me to get a ladder and climb up her window." The two talked, and later engaged in sexual intercourse. Raymond left at about 4:30 a.m. the following morning. On November 19, 1991, Erica gave birth to a baby, of which Raymond is the biological father.

Raymond was tried before the Circuit Court for Montgomery County (Miller, J.) on one count of second degree rape under § 463(a)(3) proscribing sexual intercourse between a person under 14 and another at least four years older than the complainant. At trial, the defense twice proffered evidence to the effect that Erica herself and her friends had previously told Raymond that she was 16 years old, and that he had acted with that belief. The trial court excluded such evidence as immaterial, explaining:

"Under 463, the only two requirements as relate to this case are that there was vaginal intercourse, [and] that ... Ms. Frazier was under 14 years of age and that ... Mr. Garnett was at least four years older than she.

"In the Court's opinion, consent is no defense to this charge. The victim's representation as to her age and the defendant's belief, if it existed, that she was not under age, what amounts to what otherwise might be termed a good faith defense, is in fact no defense to what amount[s] to statutory rape.

"It is in the Court's opinion a strict liability offense."

The court found Raymond guilty. It sentenced him to a term of five years in prison, suspended the sentence and imposed five years of probation, and ordered that he pay restitution to Erica and the Frazier family. Raymond noted an appeal; we

granted certiorari prior to intermediate appellate review by the Court of Special Appeals to consider the important issue presented in the case, 329 Md. 601, 620 A.2d 940.

II

In 1975 the Legislative Council of the General Assembly established the Special Committee on Rape and Related Offenses, which proposed a complete revision of Maryland law pertaining to rape and other sex crimes. *See generally* J. William Pitcher, *Rape and Other Sexual Offense Law Reform in Maryland 1976–1977,* 7 U.Balt.L.Rev. 151 (1977). Based on the Committee's work, Senate Bill 358 was introduced, amended, and enacted on May 17, 1976, as ch. 573 of the Acts of 1976. In part, it repealed the common law crime of rape, the former statutory prohibition of carnal knowledge of underage girls, and other related crimes and replaced them with the current array of criminal laws delineating two degrees of rape and four degrees of sexual offenses. *See* the 1976 Report of the Senate Judicial Proceedings Committee on S.B. 358, at 1–5 and Code, Art. 27, §§ 462–464C; *see also* Richard P. Gilbert & Charles E. Moylan, Jr., *Maryland Criminal Law: Practice and Procedure* 65–66, 68–81 (1983).

The new legislation reformulated the former statutory rape law by introducing the element of a four-year age difference between the accused and the underage complainant. Report of the Senate Judicial Proceedings Committee, at 2. As originally enacted by ch. 573 of the Acts of 1976, sexual intercourse with a person under 14 by an actor more than four years older was classified as rape in the first degree, and carried a maximum penalty of life imprisonment. The Legislature, by ch. 292 of the Acts of 1977, reduced the crime to rape in the second degree carrying a maximum sentence of 20 years in prison. These reforms of 1976 and 1977 created the law now embodied in § 463(a)(3).

Section 463(a)(3) does not expressly set forth a requirement that the accused have acted with a criminal state of mind, or *mens rea.* The State insists that the statute, by design, defines a strict liability offense, and that its essential elements

were met in the instant case when Raymond, age 20, engaged in vaginal intercourse with Erica, a girl under 14 and more than 4 years his junior. Raymond replies that the criminal law exists to assess and punish morally culpable behavior. He says such culpability was absent here. He asks us either to engraft onto subsection (a)(3) an implicit *mens rea* requirement, or to recognize an affirmative defense of reasonable mistake as to the complainant's age. Raymond argues that it is unjust, under the circumstances of this case which led him to think his conduct lawful, to brand him a felon and rapist.

## III

Raymond asserts that the events of this case were inconsistent with the criminal sexual exploitation of a minor by an adult. As earlier observed, Raymond entered Erica's bedroom at the girl's invitation; she directed him to use a ladder to reach her window. They engaged voluntarily in sexual intercourse. They remained together in the room for more than seven hours before Raymond departed at dawn. With an I.Q. of 52, Raymond functioned at approximately the same level as the 13–year–old Erica; he was mentally an adolescent in an adult's body. Arguably, had Raymond's chronological age, 20, matched his socio-intellectual age, about 12, he and Erica would have fallen well within the four-year age difference obviating a violation of the statute, and Raymond would not have been charged with any crime at all.

The precise legal issue here rests on Raymond's unsuccessful efforts to introduce into evidence testimony that Erica and her friends had told him she was 16 years old, the age of consent to sexual relations, and that he believed them. Thus the trial court did not permit him to raise a defense of reasonable mistake of Erica's age, by which defense Raymond would have asserted that he acted innocently without a criminal design. At common law, a crime occurred only upon the concurrence of an individual's act and his guilty state of mind. *Dawkins v. State*, 313 Md. 638, 643, 547 A.2d 1041 (1988). In this regard, it is well understood that generally there are two

components of every crime, the *actus reus* or guilty act and the *mens rea* or the guilty mind or mental state accompanying a forbidden act. The requirement that an accused have acted with a culpable mental state is an axiom of criminal jurisprudence. Writing for the United States Supreme Court, Justice Robert Jackson observed:

"The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.

\* \* \* \* \* \*

"Crime as a compound concept, generally constituted only from a concurrence of an evil-meaning mind with an evil-doing hand, was congenial to an intense individualism and took deep and early root in American soil."

*Morissette v. United States,* 342 U.S. 246, 250–252, 72 S.Ct. 240, 243–244, 96 L.Ed. 288 (1952).

To be sure, legislative bodies since the mid–19th century have created strict liability criminal offenses requiring no *mens rea.* Almost all such statutes responded to the demands of public health and welfare arising from the complexities of society after the Industrial Revolution. Typically misdemeanors involving only fines or other light penalties, these strict liability laws regulated food, milk, liquor, medicines and drugs, securities, motor vehicles and traffic, the labeling of goods for sale, and the like. *See Dawkins, supra,* 313 Md. at 644–645, 547 A.2d 1041; *see generally* Francis Bowes Sayre, *Public Welfare Offenses,* 33 Colum.L.Rev. 55 (1933); Richard G. Singer, *The Resurgence of* Mens Rea: *III—The Rise and Fall of Strict Criminal Liability,* 30 B.C.L.Rev. 337, 340–373 (1989) (suggesting, however, that strict liability doctrine in the United States in the late 19th century was motivated largely by moralistic fervor, such as found in the prohibitionist movement); Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law* 242–243 (2d ed. 1986); 1 *Wharton's Criminal Law* 100–

111 (Charles E. Torcia ed., 14th ed. 1978). Statutory rape, carrying the stigma of felony as well as a potential sentence of 20 years in prison, contrasts markedly with the other strict liability regulatory offenses and their light penalties.

Modern scholars generally reject the concept of strict criminal liability. Professors LaFave and Scott summarize the consensus that punishing conduct without reference to the actor's state of mind fails to reach the desired end and is unjust:

> " 'It is inefficacious because conduct unaccompanied by an awareness of the factors making it criminal does not mark the actor as one who needs to be subjected to punishment in order to deter him or others from behaving similarly in the future, nor does it single him out as a socially dangerous individual who needs to be incapacitated or reformed. It is unjust because the actor is subjected to the stigma of a criminal conviction without being morally blameworthy. Consequently, on either a preventive or retributive theory of criminal punishment, the criminal sanction is inappropriate in the absence of *mens rea.*' "

LaFave & Scott, *supra,* at 248, *quoting* Herbert L. Packer, Mens Rea *and the Supreme Court,* 1962 Sup.Ct.Rev. 107, 109.

Dean Singer has articulated other weaknesses of strict criminal liability theory: 1) extensive government civil regulations and strict liability in tort achieve the same deterrent effect; 2) the judicial efficiency of dispatching minor offenses without an inquiry into *mens rea* is attained equally by decriminalizing them, and hearing such cases in a regulatory or administrative forum; 3) the small penalties imposed for most strict liability offenses oblige the public to engage in a pernicious game of distinguishing "real" crime from some lesser form of crime; 4) some strict liability laws may result from careless drafting; and 5) strict liability dilutes the moral force that the criminal law has historically carried. *Singer, supra,* at 389–397, 403–404. The author concludes that "the predicate for all criminal liability is blameworthiness; it is the social stigma which a finding of guilt carries that distinguishes

the criminal [penalty] from all other sanctions. If the predicate is removed, the criminal law is set adrift." *Id.* at 404–405.

Conscious of the disfavor in which strict criminal liability resides, the Model Penal Code states generally as a minimum requirement of culpability that a person is not guilty of a criminal offense unless he acts purposely, knowingly, recklessly, or negligently, *i.e.*, with some degree of *mens rea.* Model Penal Code § 2.02 (Official Draft and Revised Comments 1980). The Code allows generally for a defense of ignorance or mistake of fact negating *mens rea. Id.* at § 2.04. The Model Penal Code generally recognizes strict liability for offenses deemed "violations," defined as wrongs subject only to a fine, forfeiture, or other civil penalty upon conviction, and not giving rise to any legal disability. *Id.* at §§ 1.04, 2.05.[2]

The commentators similarly disapprove of statutory rape as a strict liability crime. In addition to the arguments discussed above, they observe that statutory rape prosecutions often proceed even when the defendant's judgment as to the age of the complainant is warranted by her appearance, her sexual sophistication, her verbal misrepresentations, and the defendant's careful attempts to ascertain her true age. *See* Larry W. Myers, *Reasonable Mistake of Age: A Needed Defense to Statutory Rape,* 64 Mich.L.Rev. 105, 106 (1965). Voluntary intercourse with a sexually mature teen-ager lacks the features of psychic abnormality, exploitation, or physical danger

---

**2.** With respect to the law of statutory rape, the Model Penal Code strikes a compromise with its general policy against strict liability crimes. The Code prohibits the defense of ignorance or a reasonable mistake of age when the victim is below the age of ten, but allows it when the critical age stipulated in the offense is higher than ten. Model Penal Code, *supra,* at §§ 213.1, 213.6(1). The drafters of the Code implicitly concede that sexual conduct with a child of such extreme youth would, at the very least, spring from a criminally negligent state of mind. The available defense of reasonable mistake of age for complainants older than ten requires that the defendant not have acted out of criminal negligence. *See* the Comment to § 213.6, at 415–416.

that accompanies such conduct with children. *Id.* at 119–122.[3] *See also* Richard A. Tonry, Comment, *Statutory Rape: A Critique,* 26 La.L.Rev. 105 (1965); Michael McGillicuddy, Note, *Criminal Law: Mistake of Age as Defense to Statutory Rape,* 18 U.Fla.L.Rev. 699 (1966); Dennis L. Pieragostini, Note, *Reasonable Mistake as to Age—a Defense to Statutory Rape under the New Penal Code,* 2 Conn.L.Rev. 433 (1969) (statute since superseded); Kelly Vance, Note, State v. Elton: *The Failure to Recognize a Defense to Statutory Rape,* 1983 Utah L.Rev. 437 (case subsequently reversed upon reconsideration); Benjamin L. Reiss, Note, *Alaska's* Mens Rea *Requirements for Statutory Rape,* 9 Alaska L.Rev. 377 (1992). *But see* Frances Olsen, *Statutory Rape: A Feminist Critique of Rights Analysis,* 63 Tex.L.Rev. 387, 401–413 (1984).

Two sub-parts of the rationale underlying strict criminal liability require further analysis at this point. Statutory rape laws are often justified on the "lesser legal wrong" theory or the "moral wrong" theory; by such reasoning, the defendant acting without *mens rea* nonetheless deserves punishment for having committed a lesser crime, fornication, or for having violated moral teachings that prohibit sex outside of marriage. *See* LaFave & Scott, *supra,* at 410–410; Myers, *supra,* at 127–129. Maryland has no law against fornication. It is not a crime in this state. Moreover, the criminalization of an act, performed without a guilty mind, deemed immoral by some members of the community rests uneasily on subjective and shifting norms. "[D]etermining precisely what the 'community ethic' actually is [is] not an easy task in a heterogeneous society in which our public pronouncements about morality often are not synonymous with our private conduct." LaFave & Scott, *supra,* at 411. The drafters of the Model Penal Code remarked:

"[T]he actor who reasonably believes that his partner is above that age [of consent] lacks culpability with respect to the factor deemed critical to liability. Punishing him any-

---

3. Myers notes, too, that European law upholds mistake of age as a defense to statutory rape. *Id.* at 106, and n. 12.

way simply because his intended conduct would have been immoral under the facts as he supposed them to be postulates a relation between criminality and immorality that is inaccurate on both descriptive and normative grounds. The penal law does not try to enforce all aspects of community morality, and any thoroughgoing attempt to do so would extend the prospect of criminal sanctions far into the sphere of individual liberty and create a regime too demanding for all save the best among us."

*Id.*, Comment to § 213.6, at 415. We acknowledge here that it is uncertain to what extent Raymond's intellectual and social retardation may have impaired his ability to comprehend imperatives of sexual morality in any case.

### IV

The legislatures of 17 states have enacted laws permitting a mistake of age defense in some form in cases of sexual offenses with underage persons. In Kentucky, the accused may prove in exculpation that he did not know the facts or conditions relevant to the complainant's age. Ky.Rev.Stat. Ann. § 510.030 (1992). In Washington, the defendant may assert that he reasonably believed the complainant to be of a certain age based on the alleged victim's own declarations. Wash.Rev.Code Ann. § 9A.44.030 (1988, 1993 Cum.Supp.) In some states, the defense is available in instances where the complainant's age rises above a statutorily prescribed level, but is not available when the complainant falls below the defining age. *E.g.* Pa.Cons.Stat.Ann. tit. 18, § 3102 (1983) (defining critical age at 14); W.Va.Code Ann. § 61–8B–12 (1992 Repl.Vol.) (defining critical age at 11, defense subject to a recklessness standard); Or.Rev.Stat.Ann. § 163.325 (1990 Repl.Vol.) (defining critical age at 16).[4] In other states, the

---

4. *See also* Ariz.Rev.Stat.Ann. § 13–1407(B) (1989, 1992 Cum.Supp.) (age 14); Ark.Code Ann. § 5–14–102 (1987) (age 14); Col.Rev.Stat. § 18–3–406 (1973, 1986 Repl.Vol.) (age 15); Ind.Code Ann. § 35–42–4–3 (1985 Repl.Vol.) (age 12); Mo.Ann.Stat. § 566.020 (1979) (age 14); Mont.Code Ann. § 45–5–511(1) (1991) (age 14); N.D.Cent.Code § 12.1–

availability of the defense depends on the severity of the sex offense charged to the accused. *E.g.* Minn.Stat.Ann. §§ 609.-344–609.345 (1987, 1993 Cum.Supp.) (defense available for certain charges under third-degree and fourth-degree criminal sexual conduct).[5]

In addition, the highest appellate courts of four states have determined that statutory rape laws by implication required an element of *mens rea* as to the complainant's age. In the landmark case of *People v. Hernandez*, 61 Cal.2d 529, 39 Cal.Rptr. 361, 393 P.2d 673 (1964), the California Supreme Court held that, absent a legislative directive to the contrary, a charge of statutory rape was defensible wherein a criminal intent was lacking; it reversed the trial court's refusal to permit the defendant to present evidence of his good faith, reasonable belief that the complaining witness had reached the age of consent. In so doing, the court first questioned the assumption that age alone confers a sophistication sufficient to create legitimate consent to sexual relations: "the sexually experienced 15–year–old may be far more acutely aware of the implications of sexual intercourse than her sheltered cousin who is beyond the age of consent." *Id.*, 39 Cal.Rptr. at 362, 393 P.2d at 674. The court then rejected the traditional view that those who engage in sex with young persons do so at their peril, assuming the risk that their partners are underage:

> "[I]f [the perpetrator] participates in a mutual act of sexual intercourse, believing his partner to be beyond the age of consent, with reasonable grounds for such belief, where is his criminal intent? In such circumstances he has not consciously taken any risk. Instead he has subjectively eliminated the risk by satisfying himself on reasonable

20–01.1 (1991 Supp.) (age 15); Wyo.Stat.Ann. § 6–2–308 (1988) (age 12).

**5.** *See also* Ill.Comp.Stat. ch. 720, § 5/12–17(b) (1993) (defense available for offenses defined as criminal sexual abuse); Me.Rev.Stat.Ann. tit. 17–A, § 254.2 (1983, 1992 Cum.Supp.) (available for charge of sexual abuse of minors); Ohio Rev.Code Ann. § 2907.04 (1953, 1993 Repl. Vol.) (available for charge of corruption of minors).

evidence that the crime cannot be committed. If it occurs that he has been mislead, we cannot realistically conclude for such reason alone the intent with which he undertook the act suddenly becomes more heinous.... [T]he courts have uniformly failed to satisfactorily explain the nature of the criminal intent present in the mind of one who in good faith believes he has obtained a lawful consent before engaging in the prohibited act."

*Id.*, 39 Cal.Rptr. at 364, 393 P.2d at 676.

The Supreme Court of Alaska has held that a charge of statutory rape is legally unsupportable unless a defense of reasonable mistake of age is allowed. *State v. Guest*, 583 P.2d 836, 838–839 (Alaska 1978). The Supreme Court of Utah construed the applicable unlawful sexual intercourse statute to mean that a conviction could not result unless the state proved a criminal state of mind as to each element of the offense, including the victim's age. *State v. Elton*, 680 P.2d 727, 729 (Utah 1984) (Utah Criminal Code since amended to disallow mistake of age as a defense to unlawful sexual intercourse).[6] The Supreme Court of New Mexico determined that a defendant should have been permitted at trial to present a defense that his partner in consensual sex told him she was 17, not 15, that this had been confirmed to him by others, and that he had acted under that mistaken belief. *Perez v. State*, 111 N.M. 160, 803 P.2d 249, 250–251 (1990). Two-fifths of the states, therefore, now recognize the defense in cases of statutory sexual offenses.

## V

We think it sufficiently clear, however, that Maryland's second degree rape statute defines a strict liability offense

---

6. Both the California Penal Code and the Utah Criminal Code included provisions requiring a concurrence of act and intent to constitute a crime. The Utah Criminal Code further contained a provision authorizing convictions for strict liability offenses clearly defined as such. *See Hernandez, supra,* 39 Cal.Rptr. at 363, 393 P.2d at 675; *Elton, supra,* 680 P.2d at 728–729.

that does not require the State to prove *mens rea;* it makes no allowance for a mistake-of-age defense. The plain language of § 463, viewed in its entirety, and the legislative history of its creation lead to this conclusion.

■■■■ It is well settled that in interpreting a statute to ascertain and effectuate its goal, our first recourse is to the words of the statute, giving them their ordinary and natural import. *Fairbanks v. McCarter,* 330 Md. 39, 46, 622 A.2d 121 (1993); *NCR Corp. v. Comptroller,* 313 Md. 118, 124, 544 A.2d 764 (1988). While penal statutes are to be strictly construed in favor of the defendant, the construction must ultimately depend upon discerning the intention of the Legislature when it drafted and enacted the law in question. *State v. Kennedy,* 320 Md. 749, 754–755, 580 A.2d 193 (1990); *Davis v. State,* 319 Md. 56, 60–61, 570 A.2d 855 (1990). To that end, the Court may appropriately look at the larger context, including external manifestations of the legislative purpose, within which statutory language appears. *Fairbanks v. McCarter, supra,* 330 Md. at 46, 622 A.2d 121; *Dickerson v. State,* 324 Md. 163, 170–171, 596 A.2d 648 (1991); *Morris v. Prince George's County,* 319 Md. 597, 603–604, 573 A.2d 1346 (1990).

Section 463(a)(3) prohibiting sexual intercourse with underage persons makes no reference to the actor's knowledge, belief, or other state of mind. As we see it, this silence as to *mens rea* results from legislative design. First, subsection (a)(3) stands in stark contrast to the provision immediately before it, subsection (a)(2) prohibiting vaginal intercourse with incapacitated or helpless persons. In subsection (a)(2), the Legislature expressly provided as an element of the offense that "the person performing the act *knows or should reasonably know* the other person is mentally defective, mentally incapacitated, or physically helpless." Code, § 463(a)(2) (emphasis added). In drafting this subsection, the Legislature showed itself perfectly capable of recognizing and allowing for a defense that obviates criminal intent; if the defendant objectively did not understand that the sex partner was im-

paired, there is no crime. That it chose not to include similar language in subsection (a)(3) indicates that the Legislature aimed to make statutory rape with underage persons a more severe prohibition based on strict criminal liability. *See McAlear v. McAlear,* 298 Md. 320, 343–344, 469 A.2d 1256 (1984) (a court must read the language of a statute in relation to all of its provisions in determining legislative intent); *Pennsylvania Nat'l Mut. v. Gartelman,* 288 Md. 151, 159, 416 A.2d 734 (1980) (same).

Second, an examination of the drafting history of § 463 during the 1976 revision of Maryland's sexual offense laws reveals that the statute was viewed as one of strict liability from its inception and throughout the amendment process. As originally proposed, Senate Bill 358 defined as a sexual offense in the first degree a sex act committed with a person less than 14 years old by an actor four or more years older. *See* the 1976 Report of the Senate Judicial Proceedings Committee on S.B. 358, at 1–2. The Senate Judicial Proceedings Committee then offered a series of amendments to the bill. Among them, Amendment # 13 reduced the stipulated age of the victim from less than 14 to 12 or less. 1976 Senate Journal, at 1363. Amendment # 16 then added a provision defining a sexual offense in the second degree as a sex act with another "under 14 years of age, which age the person performing the sexual act knows or should know." 1976 Senate Journal, at 1364. These initial amendments suggest that, at the very earliest stages of the bill's life, the Legislature distinguished between some form of strict criminal liability, applicable to offenses where the victim was age 12 or under, and a lesser offense with a *mens rea* requirement when the victim was between the ages of 12 and 14.

Senate Bill 358 in its amended form was passed by the Senate on March 11, 1976. 1976 Senate Journal, at 1566. The House of Delegates' Judiciary Committee, however, then proposed changes of its own. It rejected the Senate amendments, and defined an offense of rape, without a *mens rea*

requirement, for sexual acts performed with someone under the age of 14. *See* 1976 House Journal, at 3686.[7] The Senate concurred in the House amendments and S.B. 358 became law. 1976 House Journal, at 3761; 1976 Senate Journal, at 3429; 1976 Acts of Maryland, at 1536. Thus the Legislature explicitly raised, considered, and then explicitly jettisoned any notion of a *mens rea* element with respect to the complainant's age in enacting the law that formed the basis of current § 463(a)(3). In the light of such legislative action, we must inevitably conclude that the current law imposes strict liability on its violators.

This interpretation is consistent with the traditional view of statutory rape as a strict liability crime designed to protect young persons from the dangers of sexual exploitation by adults, loss of chastity, physical injury, and, in the case of girls, pregnancy. *See Michael M. v. Sonoma County Superior Court*, 450 U.S. 464, 470, 101 S.Ct. 1200, 1204–05, 67 L.Ed.2d 437 (1981); Rita Eidson, Note, *The Constitutionality of Statutory Rape Laws*, 27 UCLA L.Rev. 757, 760–761 (1980). The majority of states retain statutes which impose strict liability for sexual acts with underage complainants. We observe again, as earlier, that even among those states providing for a mistake-of-age defense in some instances, the defense often is not available where the sex partner is 14 years old or less; the complaining witness in the instant case was only 13. The majority of appellate courts, including the Court of Special Appeals, have held statutory rape to be a strict liability crime. *Eggleston v. State,* 4 Md.App. 124, 241 A.2d 433 (1968); *see* the compilation in W.E. Shipley, Annotation, *Mistake or Lack of Information as to Victim's Age as Defense to Statutory Rape,* 8 A.L.R.3d 1100 (1966, 1992 Supp.).

---

7. The House version read in pertinent part: "A person is guilty of rape in the first degree if the person engages in vaginal intercourse: ... (2) with another person who is under 14 years of age and the person performing the act is at least four or more years older than the victim." As discussed earlier, the offense was reduced to second degree rape in 1977.

## VI

Maryland's second degree rape statute is by nature a creature of legislation. Any new provision introducing an element of *mens rea*, or permitting a defense of reasonable mistake of age, with respect to the offense of sexual intercourse with a person less than 14, should properly result from an act of the Legislature itself, rather than judicial fiat. Until then, defendants in extraordinary cases, like Raymond, will rely upon the tempering discretion of the trial court at sentencing.

*JUDGMENT AFFIRMED, WITH COSTS.*

ELDRIDGE, Judge, dissenting:

Both the majority opinion and Judge Bell's dissenting opinion view the question in this case to be whether, on the one hand, Maryland Code (1957, 1992 Repl.Vol.), Art. 27, § 463(a)(3), is entirely a strict liability statute without any *mens rea* requirement or, on the other hand, contains the requirement that the defendant knew that the person with whom he or she was having sexual relations was under 14 years of age.

The majority takes the position that the statute defines an entirely strict liability offense and has no *mens rea* requirement whatsoever. The majority indicates that the defendant's "knowledge, belief, or other state of mind" is wholly immaterial. The majority opinion at one point states: "We acknowledge here that it is uncertain to what extent Raymond's intellectual and social retardation may have impaired his ability to comprehend imperatives of sexual morality in any case." Nevertheless, according to the majority, it was permissible for the trial judge to have precluded exploration into Raymond's knowledge and comprehension because the offense is entirely one of strict liability.

Judge Bell's dissent, however, argues that, under the due process clauses of the Fourteenth Amendment and the Maryland Declaration of Rights, any "defendant may defend on the basis that he was mistaken as to the age of the prosecutrix."

In my view, the issue concerning a *mens rea* requirement in § 463(a)(3) is not limited to a choice between one of the extremes set forth in the majority's and Judge Bell's opinions. I agree with the majority that an ordinary defendant's mistake about the age of his or her sexual partner is not a defense to a prosecution under § 463(a)(3). Furthermore I am not persuaded, at least at the present time, that either the federal or state constitutions require that a defendant's honest belief that the other person was above the age of consent be a defense.[1] This does not mean, however, that the statute contains no *mens rea* requirement at all.

The legislative history of § 463(a)(3), set forth in the majority opinion, demonstrates that the House of Delegates rejected the Senate's proposed requirement that an older person, having sexual relations with another under 14 years of age, know or should know that the other person was under 14. The House of Delegates' version was ultimately adopted. From this, the majority concludes that the enacted version was "without a *mens rea* requirement." The majority's conclusion does not necessarily follow. Although the General Assembly rejected one specific knowledge requirement, it did not decree that any and all evidence concerning a defendant's knowledge and comprehension was immaterial.

There are pure strict liability offenses where "the purpose of the penalty is to regulate rather than to punish behavior" and where criminal "liability is imposed regardless of the defendant's state of mind," *Dawkins v. State,* 313 Md. 638, 645, 547 A.2d 1041 (1988). These "offenses commonly involve light fines or penalties," *Dawkins,* 313 Md. at 644, 547 A.2d at 1044. There are other offenses (also unfortunately often called "strict liability" offenses) where the legislature has dispensed with a knowledge requirement in one respect but

---

1. In this connection, it should be noted that the defendant-appellant, in his opening brief in this Court, made no constitutional argument either directly or by invoking the principle of statutory construction that a statute should be construed so as to avoid a serious constitutional problem. Consequently, the State had no opportunity to brief the constitutional issue discussed in Judge Bell's dissent.

has not intended to impose criminal liability regardless of the defendant's state of mind.[2] Such offenses

"do require 'fault' . . ., in that they 'can be interpreted as legislative judgments that persons who intentionally engage in certain activities and occupy some peculiar or distinctive position of control are to be held accountable for the occurrence of certain consequences.' "

W. LaFave & A. Scott, Jr., *Substantive Criminal Law*, ch. 3, § 3.8(c), at 349 (1986), quoting Wasserstrom, *Strict Criminal Liability*, 12 Stan.L.Rev. 731, 743 (1960). *See also* P. Robinson, *Criminal Law Defenses*, ch. 3, § 108(b), at 535 (1984) ("If reasonable mistake as to the victim's age is disallowed . . . [t]here is, . . . strict liability *with respect to that element* ") (emphasis added).

Neither the statutory language nor the legislative history of § 463(a)(3), or of the other provisions of the 1976 and 1977 sexual offense statutes, indicate that the General Assembly intended § 463(a)(3) to define a pure strict liability offense where criminal liability is imposed regardless of the defendant's mental state. The penalty provision for a violation of § 463(a)(3), namely making the offense a felony punishable by a maximum of 20 years imprisonment (§ 463(b)), is strong evidence that the General Assembly did not intend to create a pure strict liability offense.

In the typical situation involving an older person's engaging in consensual sexual activities with a teenager below the age of consent, and the scenario which the General Assembly likely contemplated when it enacted §§ 463(a)(3), 464A(a)(3), 464B(a)(3), 464C(a)(2), and 464C(a)(3), the defendant knows and intends that he or she is engaging in sexual activity with a young person. In addition, the defendant knows that the

---

**2.** As pointed out by one commentator, "it can be argued that if strict liability statutes are to be characterized as 'strict' because of their failure to permit inquiry as to the defendant's state of mind, this description is too broad. More appropriately, each criminal statute must be examined to determine in what respects it is 'strict.' " Wasserstrom, *Strict Criminal Liability*, 12 Stan.L.Rev. 731, 742 (1960).

activity is regarded as immoral and/or improper by large segments of society. Moreover, the defendant is aware that "consent" by persons who are too young is ineffective. Although in a particular case the defendant may honestly but mistakenly believe, because of representations or appearances, that the other person is above the age of consent, the ordinary defendant in such case is or ought to be aware that there is a risk that the young person is not above the age of consent. As the majority opinion points out, "the traditional view [is] that those who engage in sex with young persons do so at their peril, assuming the risk that their partners are under-age. . . . " It seems to me that the above-mentioned knowledge factors, and particularly the mental ability to appreciate that one is taking a risk, constitute the *mens rea* of the offenses defined by §§ 463(a)(3), 464A(a)(3), 464B(a)(3), 464C(a)(2) and 464C(a)(3). In enacting these provisions, the General Assembly assumed that a defendant is able to appreciate the risk involved by intentionally and knowingly engaging in sexual activities with a young person. There is no indication that the General Assembly intended that criminal liability attach to one who, because of his or her mental impairment, was unable to appreciate that risk.

It is unreasonable to assume that the Legislature intended for one to be convicted under § 463(a)(3), or under any of the other statutes proscribing sexual activity with underage persons, regardless of his or her mental state. Suppose, for example, that Raymond Garnett had not had an I.Q. of 52, but rather, had been more severely mentally retarded as was the young woman involved in *Wentzel v. Montgomery Gen. Hosp.*, 293 Md. 685, 447 A.2d 1244, *cert. denied,* 459 U.S. 1147, 103 S.Ct. 790, 74 L.Ed.2d 995 (1983). The mentally retarded person in *Wentzel* had an I.Q. of 25–30, was physiologically capable of bearing a child, but was unable to comprehend the act of sexual intercourse, or even to understand the difference between the sexes. If someone so disabled, having reached Raymond's chronological age, then had "consensual" sexual intercourse with a person younger than fourteen years of age, I do not believe that he or she would have violated Art. 27,

§ 463(a)(3). Under the view that §§ 463(a)(3), 464A(a)(3), 464B(a)(3), etc., define pure strict liability offenses without any regard for the defendant's mental state, presumably a 20 year old, who passes out because of drinking too many alcoholic beverages, would be guilty of a sexual offense if a 13 year old engages in various sexual activities with the 20 year old while the latter is unconscious. I cannot imagine that the General Assembly intended any such result.

An impaired mental condition may show the absence of *mens rea*, depending upon the circumstances. *See, e.g., Simmons v. State*, 313 Md. 33, 39 n. 3, 542 A.2d 1258, 1261 n. 3 (1988); *Hoey v. State*, 311 Md. 473, 494–495, 536 A.2d 622 (1988). In light of the defendant Garnett's mental retardation, and its effect upon his knowledge and comprehension, he may or may not have had the requisite *mens rea*. As previously mentioned, the majority opinion itself acknowledges that it is uncertain to what extent Raymond's intellectual and social retardation may have impaired his ability to comprehend standards of sexual morality. The problem in this case is that the trial judge's view of the statute, which the majority adopts, precluded an exploration into the matter.

The majority points out that the trial court would not allow testimony that Erica and her friends had told the defendant that she was 16 years old. The trial court, however, went further. The court would not allow the defendant to testify concerning his knowledge. More importantly, the trial judge took the position that the offense proscribed by § 463(a)(3) is "a strict liability offense" and that the only requirements for conviction were that "the defendant had sexual intercourse with Erica Frazier, that at that time she was 13 years of age, [and] at that time the defendant was more than 4 years older than she. These are the only requirements that the State need prove beyond a reasonable doubt." The trial court's position that the offense lacked any *mens rea* requirement, and that the defendant's mental state was wholly immaterial, was, in my view, erroneous.

I would reverse and remand for a new trial.

ROBERT M. BELL, Judge, dissenting.

"It may be possible to conceive of legislation ... so flagrantly in conflict with natural right, that the courts may set it aside as unwarranted, though no clause of the constitution can be found prohibiting it. But the cases must be rare indeed; and whenever they do occur the interposition of the judicial *veto* will rest upon such foundations of necessity that there can be little *or no room for hesitation*."

Richard G. Singer, *The Resurgence of Mens Rea: III—The Rise and Fall of Strict Criminal Liability*, 30 B.C.L.Rev. 337, 368 (1989), *quoting State v. Clottu*, 33 Ind. 409, 410–11 (1870).

I do not dispute that the legislative history of Maryland Code (1957, 1992 Repl.Vol.), Art. 27, section 463 may be read to support the majority's interpretation that subsection (a)(3) [1] was intended to be a strict liability statute. *See* majority opinion at 585. Nor do I disagree that it is in the public interest to protect the sexually naive child from the adverse physical, emotional, or psychological effects of sexual relations. I do not believe, however, that the General Assembly, in every case, whatever the nature of the crime and no matter how harsh the potential penalty, can subject a defendant to strict criminal liability. To hold, *as a matter of law*, that section 463(a)(3) [2] does not require the State to prove that a defendant

---

1. Maryland Code Ann., Art 27, § 463 provides, in pertinent part:
 (a) What constitutes.—A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person:

 \* \* \* \* \* \*

 (3) Who is under 14 years of age and the person performing the act is at least four years older than the victim.
 (b) Penalty.—Any person violating the provisions of this section is guilty of a felony and upon conviction is subject to imprisonment for a period of not more than 20 years.

2. There are other provisions of the Maryland sexual offenses statutes similar in purpose and effect to section 463(a)(3). Md.Code (1957, 1992 Repl.Vol.) §§ 464A, 464B, and 464C also do not specify a mental state and, therefore, would also be, under the majority's rationale, strict liability crimes. Sections 464A and 464B define statutory second degree sexual act and statutory third degree sexual offense. Although neither involves intercourse, both are felonies with maximum penalties

possessed the necessary mental state to commit the crime, *i.e.* knowingly engaged in sexual relations with a female under 14, or that the defendant may not litigate that issue in defense, "offends a principle of justice so rooted in the traditions of conscience of our people as to be ranked as fundamental" and is, therefore, inconsistent with due process. *See United States v. Ransom,* 942 F.2d 775, 776–77 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 897, 116 L.Ed.2d 799 (1992), quoting *Snyder v. Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674, 677 (1934).

In the case *sub judice,* according to the defendant, he intended to have sex with a 16, not a 13, year old girl. This mistake of fact was prompted, he said, by the prosecutrix herself; she and her friends told him that she was 16 years old. Because he was mistaken as to the prosecutrix's age, he submits, he is certainly less culpable than the person who knows that the minor is 13 years old, but nonetheless engages in sexual relations with her. Notwithstanding, the majority has construed section 463(a)(3) to exclude any proof of knowledge or intent. But for that construction, the proffered defense would be viable. I would hold that the State is not relieved of its burden to prove the defendant's intent or knowledge in a statutory rape case and, therefore, that the defendant may defend on the basis that he was mistaken as to the age of the prosecutrix.[3]

---

of 20 and 10 years respectively. Section 464C proscribes the same conduct as section 463(a)(2); however, it applies to minors 14 or 15 years old and it punishes that conduct much less severely. *see* n. 15 *infra.*

**3.** The analysis I would employ is that developed for use in self defense cases, perfect and imperfect. Before the State's burden affirmatively to prove the defendant's mental state kicks in, the defendant must have generated the issue by producing "some evidence" supporting his or her claim of mistake of fact. *State v. Martin,* 329 Md. 351, 358–59, 619 A.2d 992, 995–96 (1993). If the defendant generates the issue, the State must prove beyond a reasonable doubt that the act was committed without any mistake of fact—that the defendant acted intentionally and knowingly. *See id.; see also State v. Evans,* 278 Md. 197, 208, 362 A.2d 629, 635 (1976); *Dykes v. State,* 319 Md. 206, 216–17, 571 A.2d 1251, 1257 (1990).

## I. Mens Rea Generally

Generally, a culpable mental state, often referred to as *mens rea, see* Wharton's Criminal Law, § 27, or intent, is, and long has been, an essential element of a criminal offense. *Morissette v. United States,* 342 U.S. 246, 251–52, 72 S.Ct. 240, 244, 96 L.Ed. 288, 294 (1952); *Tate v. State,* 236 Md. 312, 203 A.2d 882 (1964); *Davis v. State,* 204 Md. 44, 102 A.2d 816 (1953); *Webb v. State,* 201 Md. 158, 93 A.2d 80 (1952); *Fenwick v. State,* 63 Md. 239, 240–41 (1885). A crime ordinarily consists of prohibited conduct *and* a culpable mental state; a wrongful act and a wrongful intent must concur to constitute what the law deems a crime, the purpose being to avoid criminal liability for innocent or inadvertent conduct. *See Dawkins v. State,* 313 Md. 638, 643, 547 A.2d 1041, 1043 (1988); *see also* Wharton's Criminal Law, § 27, citing *United States v. Fox,* 95 U.S. 670, 24 L.Ed. 538 (1877). Historically, therefore, unless the actor also harbored an evil, or otherwise culpable, mind, he or she was not guilty of any crime.

The Supreme Court in *Morissette,* recognized that ordinarily, a defendant cannot be convicted when he or she lacks the mental state which is an element of the offense charged. That concept—crime as a compound concept—gained early acceptance in the English Common law and "took deep and early root in American soil." [4] 342 U.S. at 251–52, 72 S.Ct. at 244, 96 L.Ed. at 294 (footnote omitted). In that case, Mr. Justice Jackson stated the proposition thusly:

> The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient

---

**4.** The Court stated that exceptions were developed in the course of the common law for "sex offenses, such as rape, in which the victim's actual age was determinative despite the defendant's reasonable belief that the girl had reached age of consent." *Morissette,* 342 U.S. at 251 n. 8, 72 S.Ct. at 244 n. 8, 96 L.Ed. at 294 n. 8, It, however, did not discuss whether the exceptions could withstand constitutional scrutiny, stating only that the exceptions were not relevant to the case before the Court. *See id.;* 342 U.S. at 250–51 n. 8, 72 S.Ct. at 244 n. 8, 96 L.Ed. at 294 n. 8.

notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation between some mental element and punishment for a harmful act is almost as instinctive as the child's familiar exculpatory "But I didn't mean to," and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution. Unqualified acceptance of this doctrine by English common law in the Eighteenth Century was indicated by Blackstone's sweeping statement that to constitute any crime there must first be a "vicious will."

*Id.* at 250–51, 72 S.Ct. at 243, 96 L.Ed. at 294 (footnotes omitted).

In *Morissette, (id.* at 247–48, 72 S.Ct. at 242, 96 L.Ed. at 292–93), the defendant, a scrap iron collector, went onto a government bombing range, where bomb casings were piled haphazardly. Morissette loaded the casings onto his truck in broad daylight and took them. He was indicted for "unlawfully, wilfully and knowingly steal[ing] and convert[ing]" property of the United States, in violation of 18 U.S.C. § 641, 18 U.S.C.A. § 641. He sought to defend on the basis that he thought the casings were abandoned, unwanted, and of no value to the government. The trial court refused to permit evidence on that point, which was affirmed on appeal. The Supreme Court reversed, holding that where intent is an essential element of the crime charged, its existence is a question of fact for the jury, and "the trial court may not withdraw or prejudge the issue by instruction that the law raises a presumption of intent from an act." *Id.* at 274, 72 S.Ct. at 255, 96 L.Ed. at 306. It was in this context that the Court discussed the importance of intent. The Court concluded:

The unanimity with which they [courts] have adhered to the central thought that wrongdoing must be conscious to be criminal is emphasized by the variety, disparity and confusion of their definitions of the requisite but elusive mental

element. However, courts of various jurisdictions, and for the purposes of different offenses, have devised working formulae, if not scientific ones, for the instruction of juries around such terms as "felonious intent," "criminal intent," "malice aforethought," "guilty knowledge," "fraudulent intent," "willfulness," "*scienter,*" to denote guilty knowledge or "*mens rea,*" to signify an evil purpose or mental culpability.

*Id.* at 252, 72 S.Ct. at 244, 96 L.Ed. at 294–95.

More recently, in *Anderson v. State,* 328 Md. 426, 444, 614 A.2d 963, 972 (1992), we held that the trial court improperly convicted the defendant for carrying concealed, pursuant to Article 27, § 36(a), a utility knife without considering the intent with which the utility knife was being carried. Noting that the utility knife could be used both as a tool and as a weapon, *id.* at 437–39, 614 A.2d at 968–69, we rejected the State's argument that no intent was required. *Id.* at 444, 614 A.2d at 971. We said instead that, when the object is not a dangerous weapon *per se,* to convict a defendant of carrying a concealed dangerous weapon requires proof that the defendant intended to use the object as a weapon. *Id.* at 444, 614 A.2d at 971.

Although it recognized that Congress could dispense with the intent requirement if it did so specifically, the Court made clear that that power was not without limit. *Morissette,* 342 U.S. at 275, 72 S.Ct. at 256, 96 L.Ed. at 307, citing *Tot v. United States,* 319 U.S. 463, 467, 63 S.Ct. 1241, 1245, 87 L.Ed. 1519, 1524 (1943). Thus, when a legislature wants to eliminate intent as an element of a particular crime, it should expressly so state in the statute. *See* Larry W. Myers, *Reasonable Mistake of Age: A Needed Defense to Statutory Rape,* 64 Mich.L.Rev. 105, 118–19 (1965); *see also People v. Hernandez,* 61 Cal.2d 529, 536, 39 Cal.Rptr. 361, 365, 393 P.2d 673, 677 (1964) ("in the absence of a legislative direction otherwise, a charge of statutory rape is defensible wherein criminal intent is lacking."); Singer, *supra,* at 397. Legislative imposition of strict criminal liability, however, must be within constitutional limits; it cannot be permitted to violate the Due Process requirement of the Fourteenth Amendment, *see Lambert v.*

*California,* 355 U.S. 225, 227, 78 S.Ct. 240, 242, 2 L.Ed.2d 228 (1957), or a comparable state constitutional provision. *See infra.*

## II. Strict Liability Crimes

Strict liability crimes are recognized exceptions to the "guilty mind" rule in that they do not require the actor to possess a guilty mind, or the *mens rea,* to commit a crime. *See Morissette,* 342 U.S. at 251–52 n. 8, 72 S.Ct. at 244 n. 8, 96 L.Ed. at 294 n. 8. His or her state of mind being irrelevant, the actor is guilty of the crime at the moment that he or she does the prohibited act.

### A.

In the evolution of the statutory criminal law, two classes of strict liability crimes have emerged. Richard A. Tonry, *Statutory Rape: A Critique,* La.L.Rev. 105 (1965). One of them consists of "public welfare" offenses. *See id.; see also Dawkins,* 313 Md. 638, 547 A.2d 1041. Typical of this class are statutes involving, for example, the sale of food, drugs, liquor, and traffic offenses, *see* Tonry, *supra,* at 106, designed to protect the health, safety, and welfare of the community at large; violation of such statutes "depend on no mental element but consist[s] only of forbidden acts or omissions." *Morissette,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288. In the case of public welfare offenses, strict liability is justified on several bases, including: (1) only strict liability can deter profit-driven manufacturers from ignoring the well-being of the consuming public; (2) an inquiry into *mens rea* would exhaust the resources of the courts; (3) imposition of strict liability is not inconsistent with the moral underpinnings of the criminal law because the penalties are small and carry no stigma; and (4) the legislature is constitutionally empowered to create strict liability crimes for public welfare offenses. Singer, *supra,* at 389.

In *Dawkins,* 313 Md. at 644–645, 547 A.2d at 1044–45, this Court discussed the development of public welfare offenses and noted their characteristics:

"Public Welfare Offenses" are generally regulatory in nature. The earliest cases involved liquor and adulterated milk.... Later cases expanded the doctrine to apply to violations of traffic regulations and motor vehicle laws, sales or misbranded articles, and sales or purchases in violation of anti-narcotics laws.... These offenses commonly involve light fines or penalties.... "[T]he penalty in such cases is so slight that the courts can afford to disregard the individual in protecting the social interest...." Additionally, the purpose of the penalty is to regulate rather than to punish behavior.... While liability is imposed regardless of the defendant's state of mind, the defendant is generally in a position to prevent the violation from occurring....

313 Md. at 645, 547 A.2d at 1044 (citations omitted). The Supreme Court has also commented on such offenses, observing:

These cases do not fit neatly into any of such accepted classifications of common-law offenses, such as those against the state, the person, property, or public morals. Many of these offenses are not in the nature of positive aggressions or invasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize. While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect

and no more exertion than it might reasonably exact from one who assumed his responsibilities.

*Morissette,* 342 U.S. at 255–56, 72 S.Ct. at 246, 96 L.Ed. at 296. To like effect,

> ... public welfare offenses are *new* crimes, created solely by legislative enactments in the nature of police regulations. Moreover, these offenses are not strictly criminal, even though traditional criminal sanctions are relied upon, since the primary purpose of the legislature is neither punishment nor correction, but rather regulation.

Myers, *supra,* at 114 (footnote omitted).

Obviously, and the majority concurs, *see* majority opinion at 579, "statutory rape" is not merely a public welfare offense; it simply does not "fit" the characteristics of such an offense: it is a felony, not a misdemeanor. In striking contrast to "other strict liability regulatory offenses and their light penalties," majority opinion at 579, the potential penalty of 20 years imprisonment is not a light penalty; unlike the "garden variety" strict liability penalty, the penalty under section 463(a)(3), is neither so insignificant that it can be ignored as a criminal sanction, *see* Singer, *supra,* at 394, nor so slight that the fate of the defendant can be ignored, *see* Wayne R. LaFave and Austin W. Scott, Jr., *Criminal Law,* § 31, at 219 (1972) ("The greater the possible punishment, the more likely some fault is required; and conversely, the lighter the possible punishment, the more likely the legislature meant to impose liability without fault."); and section 463's primary purpose is to penalize the "rapist", not to correct his or her behavior.[5]

### B.

The second class of strict liability offenses, having a different justification than public welfare offenses, consists of nar-

---

5. In *State v. McCallum,* 321 Md. 451, 455–56, 583 A.2d 250, 252–53 (1991), we characterized the crime of driving with a suspended license as both punitive and regulatory and concluded that a mental state was required. The argument that § 463(a)(3), which is purely punitive, must require proof of a mental state is stronger.

cotic,[6] bigamy,[7] adultery, and statutory rape crimes. *See Morissette,* 342 U.S. at 251 n. 8, 72 S.Ct. at 244 n. 8, 96 L.Ed. at 294 n. 8; Tonry, *supra,* at 106. State legislatures have historically used two theories to justify imposing strict liability in this class of offense: "lesser legal wrong" and "moral wrong." *See* Benjamin L. Reiss, *Alaska's Mens Rea Requirements for Statutory Rape,* 9 Alaska L.Rev. 377, 381–82 (1992).

The lesser legal wrong theory posits that a defendant who actually intended to do some legal or moral wrong is guilty not only of the crime intended but of a greater crime of which he or she may not have the requisite mental state. LaFave and Scott, *supra,* § 47, at 360. The elimination of a *mens rea* element for statutory rape is rationalized by focusing on the defendant's intent to commit a related crime. Reiss, *supra,* at 381. In other words, if fornication[8], engaging in sexual intercourse out of wedlock, *see generally* Model Penal Code, § 213.6, Comment at 430–39, is a crime, a defendant intending to engage in sex out of wedlock is made to suffer all of the legal consequences of that act. Statutory rape is such a legal consequence when the other participant is below the age of consent. Reiss, *supra,* at 382. The theory is premised, in short, upon the proposition that, as to certain crimes, "a 'guilty mind' in a very general sense, should suffice for the imposition

---

**6.** Maryland does not treat narcotic offenses as strict liability crimes. *See Dawkins,* 313 Md. 638, 547 A.2d 1041 (1988) (knowledge is an element of possession of a controlled dangerous substance).

**7.** The Maryland bigamy statute, proscribing the entering into of a marriage ceremony while lawfully married to another, excludes from its coverage individual whose "lawful spouse has been absent from the individual for a continuous period of seven years and who, at the time of the subsequent marriage ceremony, does not know whether or not the spouse is living." Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 18(b). *See Braun v. State,* 230 Md. 82, 85–90, 185 A.2d 905, 906–07 (1962). The Legislature thus has now recognized the unfairness of convicting a person for remarrying if that person has a *reasonable* belief that his or her former spouse is dead.

**8.** American penal statutes against fornication are generally unenforced, which may be reflective of the view that such a use of the penal law is improper. *See* Model Penal Code, § 213, Comment at 434.

of penal sanctions even when the defendant did not intentionally or knowingly engage in the acts proscribed in the statute." *See* LaFave and Scott, *supra,* § 47, at 361.

The seminal case in this area is *Regina v. Prince,* L.R. 2 Cr.Cas.Res. 154 (1875), *cited in* Myers, *supra,* at 110 and Model Penal Code, § 213.6, Comment at 414 n. 6. There, the defendant was charged with unlawfully taking a girl under the age of 16 out of the possession of the father against his will. The defendant claimed that he acted on the reasonable belief that the girl was 18. The court held that it was no defense that he thought he was committing a different kind of wrong from that which he, in fact, was committing, it being wrong to remove a daughter, even one over 16, from her father's household.

The lesser legal wrong theory does not provide a viable rationale for holding a defendant strictly liable for statutory rape where premarital sex is not criminal.[9] Reiss, *supra,* at 382. *See* LaFave and Scott, *supra,* § 47, at 361 ("[W]here fornication is itself not criminal it [statutory rape] should not become criminal merely because the defendant has made a reasonable mistake about the age of the girl with whom he has intercourse").[10] Fornication is not a crime in Maryland. *See*

---

9. Sexual intercourse out of wedlock is still a crime in several American Jurisdictions. *See* Model Penal Code, § 213.6, Comment at 430. The prohibition derives from Biblical sources and long fell within the exclusive jurisdiction of the ecclesiastical authorities. *Id.* In England, secular punishment began under Cromwell's theocracy and was abandoned after the Restoration. *Id.* The Puritans of New England reinstituted punishment for sexual misbehavior. *Id.* At one time or another, most American states extended their penal laws to reach such misconduct, but the trend in this century has been toward decriminalization or reduction of penalties. *See e.g. Baker v. Lease,* 236 Md. 246, 248, 203 A.2d 700, 701 (1964). *See generally* Model Penal Code § 213.6, Comment at 430 (footnote omitted).

10. A conviction plausibly could have been supported under the lesser legal wrong theory had the defendant been married when he had sex with the prosecutrix. Adultery remains a crime in Maryland. *See* Md.Code (1957, 1992 Repl.Vol.) Art. 27, § 4. The defendant's intent to commit adultery, the lesser legal wrong, would suffice as the requisite mental state for the greater crime of statutory rape.

*Baker v. Lease,* 236 Md. 246, 248, 203 A.2d 700, 701 (1964). Accordingly, in Maryland, there is no underlying offense from which to transfer intent. Moreover,

[a] man who engages in consensual intercourse in the reasonable belief that his partner has reached [the age of consent [11]] evidences no abnormality, no willingness to take advantage of immaturity, no propensity to corruption of minors. In short, he has demonstrated neither intent nor inclination to violate any of the interests that the law of statutory rape seeks to protect. At most, he has disregarded religious precept or social convention. In terms of mental culpability, his conduct is indistinguishable from that of any other person who engages in fornication. Whether he should be punished at all depends on a judgment about continuing fornication as a criminal offense, but at least he should not be subject to felony sanctions for statutory rape.

Model Penal Code § 213.6, Comment at 415.

## C.

In utilizing the moral wrong theory, State legislatures seek to justify strict criminal liability for statutory rape when non-marital sexual intercourse is not a crime on the basis of society's characterization of it as immoral or wrong, *i.e.,* *malum in se.*[12] Reiss, *supra,* at 382. The intent to commit

---

11. In contrast, one who engages in sexual relations with a child who clearly does not appear to be of the age of consent, for example, a minor 7 years of age, evidences a propensity to corrupt minors. Because that person necessarily is aware that the minor is not of the age to consent, almost all authorities believe that he or she is properly held accountable on a strict liability basis. *See e.g.* Model Penal Code, § 213.6, Comment at 415–16.

12. An offense *malum in se* is properly defined as one which is naturally evil as adjudged by the sense of a civilized community. Acts *mala in se* have, as a general rule, become criminal offenses by the course and development of common law. Black's Law Dictionary 281 (1984). In comparison, an act *malum prohibitum* is wrong only because made so by statute. *Id. Malum in se* crimes usually include all felonies, injuries to property, adultery, bigamy, indecent acts committed upon underage children, and conduct contributing to the delinquency of a minor. *See*

such immoral acts supplies the *mens rea* for the related, but unintended crime; the outrage upon public decency or good morals, not conduct that is wrong only because it is prohibited by legislation, *i.e., malum prohibitum*, is the predicate.

There are significant problems with the moral wrong theory. First, it is questionable whether morality should be the basis for legislation or interpretation of the law. *See* Tonry, *supra*, at 113; *see also* Singer, *supra*, at 338 (moral blame should be abolished as a predicate for criminal liability). Immorality is not synonymous with illegality; intent to do an immoral act does not equate to intent to do a criminal act. Inferring criminal intent from immorality, especially when the accused is not even aware that the act is criminal, seems unjustifiable and unfair. *See* Reiss, *supra*, at 382. In addition, the values and morals of society are ever evolving. Because sexual intercourse between consenting unmarried adults and minors who have reached the age of consent is not now clearly considered to be immoral, the moral wrong theory does not support strict criminal liability for statutory rape.

Second, classifying an act as immoral, in and of itself, divorced from any consideration of the actor's intention, is contrary to the general consensus of what makes an act moral or immoral. *See* Tonry, *supra*, at 113. Ordinarily, an act is either moral or immoral depending on the intention of the actor. *Id.,* citing Holmes, *Early Forms of Liability,* in The Common Law 7 (Howe ed. 1963), citing Bradley, *Ethical Studies,* Essay 1 (1876) ("Even a dog distinguishes between being stumbled over and being kicked.").

Third, the assertion that the act alone will suffice for liability without the necessity of proving criminal intent is contrary to the traditional demand of the criminal law that only the act plus criminal intent is sufficient to constitute a crime. *See* Tonry, *supra*, at 113. "Moral duties should not be identified with criminal duties," and, thus, when fornication is

---

Myers, *supra,* at 115; *see also* Rollin M. Perkins and Ronald N. Boyce, *Criminal Law,* 109 (3rd ed. 1982).

itself not criminal it should not become criminal merely because the defendant has made a reasonable mistake about the age of the girl with whom he has had intercourse. *See Hernandez*, 61 Cal.2d at 534, 39 Cal.Rptr. at 364, 393 P.2d at 676; *see also* Myers, *supra*.

Therefore, although in the case *sub judice*, the defendant engaged in sexual relations with a girl 13 years old, a minor below the age of consent, his conduct is not *malum in se, see* 4 W. Blackstone, Commentaries * 210, and, so, strict liability is not justified.

### III. Mistake of Fact

Generally, a mistake of fact negates the mental state required to establish a material element of the crime. LaFave and Scott, *supra*, § 47, at 356. A person who engages in proscribed conduct is relieved of criminal liability if, because of ignorance or mistake of fact, he or she did not entertain the culpable mental state required for the commission of the offense. *See* Wharton's Criminal Law § 76.[13] *Compare Richmond v. State*, 330 Md. 223, 241–42, 623 A.2d 630, 638 (1993) (Bell, J., dissenting) (In case of self-defense, defendant who acts in self-defense is completely exonerated upon findings that he or she subjectively believed that his or her actions were necessary and, viewed objectively, that they were, in fact, necessary; in case of imperfect self-defense, defendant who subjectively believes that his or her actions were necessary, but, objectively, they were not, is not completely exonerated, although lesser sentence is appropriate).

Statutory rape is defined as sexual intercourse, by a person four or more years older, with a person under the age of 14. Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 463(a)(3).[14]

---

**13.** The mistaken belief must tend to negate the *mens rea* necessary to the commission of the crime. For example, belief that the victim was 13½ years of age, instead of 13, will be of no avail since section 463(a)(3)'s age limit is 14.

**14.** It is noteworthy that the early English statutes providing for strict criminal liability for statutory rape did not deny the defense of mistake

That statute conclusively presumes that a person under that age is incapable of legally consenting to sexual intercourse.[15]

of fact. Under very early English common law, it was no crime to have consensual relations with a female, regardless of her age. Myers, *supra,* at 109, citing 4 W. Blackstone Commentaries *210 and 2 Coke, Institutes *180. It was not until the latter part of the thirteenth century that legislation was enacted in England making it unlawful to ravish "damsels" under the age of 12 years, with or without their consent, considered an action of trespass, with a penalty of two years and a fine in such sum as the sovereign directs. Gilbert & Moylan, *Criminal Law,* § 5.0., citing 4 W. Blackstone, Commentaries *212. Toward the close of the 16th century, the age of consent was reduced to 10 years old, the purpose of the statute being to declare that a girl under the prescribed age was presumed incapable of consent because she was too young to understand the nature and quality of her act. Myers, *supra,* at 109–10; Charles E. Torcia, *Wharton's Criminal Law,* § 291; 1 Blackstone Comm. *212. The offense was also increased to a felony. *See* Gilbert & Moylan, *Criminal Law,* § 5.0., citing 13 Edward I, Statute of Westminster 2, c.34 and Statute 18 Elizabeth I, c. 7. English courts, in contrast to American courts, which never have allowed it, however, never denied the existence of the reasonable mistake of fact defense. Myers, *supra,* at 111. American Courts erroneously interpreted *Regina v. Prince,* L.R. 2 Cr.Cas.Res. 154 (1875), *cited in* Myers, *supra,* at 111, and applied its rationale to statutory rape.

15. Two policy considerations have historically been advanced to justify strict criminal liability for statutory rape: (1) it is desirable to provide the fullest protection to the innocent and naive female child incapable of understanding the nature of sexual intercourse; and (2) the act is immoral in itself, *malum in se,* discussed *supra,* and, so, it is appropriate to hold that the offender acts at his peril. *See* Tonry, *supra,* at 111.

Establishing an age, below which females are considered sexually immature and above which, they are considered sexually mature, does not assure that the first policy consideration will be achieved. *See* Tonry, *supra,* at 111. Age alone is not sufficient, considering that, in this country, the age of consent for statutory rape purposes ranges from 7 to 21 years. *Id.*

The inadequacy of age as a demarcation line actually points up the flaws in the strict criminal liability analysis. First, it would seem reasonable to allow the accused to introduce evidence of the minor's maturity, sophistication, and past sexual experience, since maturity, not age, is the chief concern, age being but a factor. Second, the age standard (unless it is low enough) with its universal application draws an arbitrary line, resulting in the imposition of disproportionate penalties. *See* J. William Pitcher, *Legislation,* 7 Balt.L.Rev. 150, 165 (1977); *see also* Tonry, *supra,* at 112. Thus, for example, pursuant to section 463(a)(3) sexual intercourse with a person under 14 years of age, if the actor is at least four years older than the victim, is a second degree rape offense punishable by a possible twenty years imprisonment. Under

*Rau v. State*, 133 Md. 613, 105 A. 867 (1919) (consent is not an element of assault with intent to have carnal knowledge of a female child under 14 years);[16] *Ollis v. State*, 44 Ga.App. 793, 163 S.E. 309 (1932); *Golden v. Commonwealth*, 289 Ky. 379, 158 S.W.2d 967 (1942). That the female is incapable of consenting means that any act of intercourse in which she engages, even with her consent, is conclusively presumed to have been against her will. *See* Tonry, *supra*, at 106. Consequently, a person engaging in intercourse with a female, whom he knows to be under 14 may not set up her consent as a defense. This does not mean, however, that one who does not know that the female is under 14 should not be able to set up his mistake of fact as a defense. This is because the closer a minor is to the age of consent, the more the appearance and behavior of that minor can be expected to be consistent with persons who have attained the age of consent. *Perez v. State*, 111 N.M. 160, 803 P.2d 249 (1990) (strict liability inappropriate where victim in 13–16 age range); *Hernandez*, 61 Cal.2d at 534 n. 3, 39 Cal.Rptr. at 364 n. 3, 393 P.2d at 676 n. 3. Indeed, one may plausibly mistake a minor 13 years old as being of the statutory age of consent.

A girl 13 years old may appear to be, and, in fact, may represent herself as being, over 16. If she should appear to be the age represented, a defendant may suppose reasonably that he received a valid consent from his partner, whom he mistakenly believes to be of legal age, only to find that her

---

section 464C, defining a fourth degree sexual offense, the same conduct if committed with a child 14 or 15 is punishable by a possible 1 year sentence. Thus, the law creates a potential disparity of up to 19 years for a difference of as little as one day in the victim's age. *See* J. William Pitcher, *Legislation*, 7 Balt.L.Rev. 150, 165 (1977). Third, placing the age standard too high may result in the anomaly of a female being legally able to consent to marriage, but unable to consent to intercourse. Tonry, *supra*, at 112, citing Ploscowe, *Sex and the Law* 184 (1951).

**16.** While consent was not an element of assault with intent to have carnal knowledge of a female child under 14 years, by definition, the intent to have such knowledge of a 14 year old child was. Consequently, focusing on intent, the result in that case was not inconsistent with the common law.

consent is legally invalid. In this situation, the majority holds, his reasonable belief as to the girl's age and consequent lack of criminal intent are no defense; the act alone suffices to establish guilt. But it is when the minor plausibly may represent that she has attained the age of consent that need for a defendant to be able to present a defense based on his or her belief that the minor was of the age to consent is the greatest.

The California Supreme Court in *Hernandez,* 61 Cal.2d at 534 n. 3, 39 Cal.Rptr. at 364 n. 3, 393 P.2d at 676 n. 3, quoting Plascowe, *Sex and the Law* 184-85 (1951), has recognized mistake of age as a defense to statutory rape. There, the defendant was convicted of statutory rape pursuant to a California law setting a consent age limit of 18 years of age. The prosecutrix was 17 years and 9 months old. The court held that an offer of proof of defendant's reasonable belief that the prosecutrix had reached the age of consent was a defense to statutory rape. 61 Cal.2d at 536, 39 Cal.Rptr. at 365, 393 P.2d at 677. The court reasoned that the imposition of criminal sanctions required conduct accompanied by a specific mental state, *i.e.,* "the joint operation of act and intent." 61 Cal.2d at 532, 39 Cal.Rptr. at 363, 393 P.2d at 675. It opined (*id.* 61 Cal.2d at 534 n. 3, 39 Cal.Rptr. at 364 n. 3, 393 P.2d at 676 n. 3, quoting Plascowe, *Sex and the Law* at 184 and 185 (1951)):

> "When the law declares that sexual intercourse with a girl under the age of ten years is rape, it is not illogical to refuse to give any credence to the defense, 'I thought she was older, and I therefore did not believe that I was committing a crime when I had sexual intercourse with her.' * * * But when age limits are raised to sixteen, eighteen, and twenty-one, when the young girl becomes a young woman, when adolescent boys as well as young men are attracted to her, the sexual act begins to lose its quality of abnormality and physical danger to the victim. Bona fide mistakes in the age of girls can be made by men and boys who are no more dangerous than others of their social, economic and educational level. * * * Even if the girl looks to be much older

than the age of consent fixed by the statute, even if she lies to the man concerning her age, if she is a day below the statutory age sexual intercourse with her is rape. The man or boy who has intercourse with such girl still acts at his peril. *The statute is interpreted as if it were protecting children under the age of ten.*"

Moreover, Myers, *supra*, at 121, concurs that reasonable mistake of age, should be a defense to statutory rape where there is no threat of force. He explains his position thusly:

[T]here are many girls between the ages of twelve and fifteen who are so obviously immature in physique, dress, and deportment that they would be approached only by a person psychologically disturbed or coming from a subculture where the acceptable age-range is lower than the usual level in the United States. However, there are even more girls from twelve to fifteen whose appearance and behavior place them within, or on the vague border of, the average male's category of desirable females. By the middle teens, most girls are sufficiently developed physically and are sufficiently aware of social attitudes for a man to have to use considerable force or some definite threat if the girl objects to sexual contact. (Footnote omitted).

Thus, it has been observed that, "[b]y the middle teens most girls have reached a point of maturity which realistically enables them to give meaningful, although not legal, consent." *Id.* at 122. It is for this reason that "[i]ntercourse with a girl who is in her middle to late teens lacks the qualities of abnormality and physical danger that are present when she is still a child.... It is clear that the element of 'victimization' decreases as the girl grows older and more sophisticated."[17] *Id.* at 121–22. *See e.g. State v. Guest*, 583 P.2d 836 (Alaska

17. Recognizing that the statutory rape law stemmed from traditional notions underlying the presumption of incapacity to consent, presuming that the male was responsible for the occurrence and the female was "too innocent and naive to understand the implications and nature of her act", in *Hernandez*, 61 Cal.2d at 531 n. 1, 39 Cal.Rptr. at 362 n. 1, 393 P.2d at 674 n. 1, the California Supreme Court quoted the following passage from *State v. Snow*, 252 S.W. 629, 632 (Mo.1923) to

1978); *State v. Elton,* 680 P.2d 727 (Utah 1984); *Powe v. State,* 389 N.W.2d 215 (Minn.App.1986); *Perez v. State,* 111 N.M. 160, 803 P.2d 249 (1990).

The Model Penal Code, long an adversary of strict liability crimes, proposes two categories of statutory rape. The first, would impose strict liability on one who has sexual relations with a child under 10. *See generally* Model Penal Code and Commentaries, § 213.6, Comment at 415–16.[18] *See also* Del. tit. 11, § 772(a); Ohio § 2907.02(A)(3); Pa. tit. 18, § 3102; W.Va. § 61–8B–13(b). The second category would encompass minors under the critical statutory age of consent, but over 10 years old. Model Penal Code, § 213.6, Comment at 415–16. Having sexual relations with a child falling in this category would still be a crime, but a defendant could escape punishment if he or she proved that he or she was mistaken as to the

---

illustrate the potentially unfair consequences of employing these presumptions of female victimization:

"We have in this case a condition and not a theory. This wretched girl was young in years but old in sin and shame. A number of callow youths, of otherwise blameless lives ... fell under her seductive influence. They flocked about her, ... like moths about the flame of a lighted candle and probably with the same result. The girl was a common prostitute....

The boys were immature and doubtless more sinned against than sinning. They did not defile the girl. She was a mere 'cistern for foul toads to knot and gender in.' Why should the boys, misled by her, be sacrificed? What sound public policy can be subserved by branding them as felons? Might it not be wise to ingraft an exception in the statute?"

Today, the increasing sexual awareness and promiscuity currently evident at lower ages enhances the probability that sexual experimentation will be indulged in, and many times solicited, by the supposed victim. *See* Myers, *supra,* at 122. Indeed, in this case there is every reason to question whether the victim was the petitioner, rather than the minor female. The petitioner has an IQ of 52. The prosecutrix and her friends told the petitioner that she was 16 and the record does not suggest that she did not appear to be that age. The petitioner entered the prosecutrix's room at her invitation and remained with her for almost seven hours.

18. Although it is not necessary in this case to reach the issue, I am not nearly so troubled by the retention of strict liability in cases involving very young children, *i.e.* under the age of 10, while requiring the State to prove *mens rea* in cases involving minors above the age of 10.

child's age. Both categories are consistent with the prevailing contemporary view, and with the common law, that a child under 10 years old is too young to understand the nature and quality of his or her act, Myers, *supra*, at 109–10; Charles E. Torcia, *Wharton's Criminal Law*, § 291; 1 Blackstone Commentaries § 212, and that a child over 10 years of age ordinarily is aware of social attitudes and the nature of sexual contact. *See* Myers, *supra*, at 121; *see also Hernandez*, 61 Cal.2d at 534 n. 3, 39 Cal.Rptr. at 364 n. 3, 393 P.2d at 676 n. 3. Thus, the Code would allow the defendant to defend a charge of rape involving a minor falling in the second category on the basis that he or she reasonably believed the child to be above the critical age. *See* Model Penal Code § 213.6, Comment at 416.[19]

In the case *sub judice*, the defendant does not dispute that he had sexual relations with the 13 year old prosecutrix. He seeks only to be able to defend himself against being labeled a rapist. He may only do so, however, if he is allowed to present evidence that he·acted under a mistake of fact as to the prosecutrix's age, that he believed, and reasonably so, that she was above the age of consent. The proof he proposed to present to prove his defense was that the victim and her friends told him that the victim was 16 years old. He should have been allowed to show that he lacked the "guilty mind" to have sex with a 13 year old.

## IV. Constitutional Limitations on Strict Criminal Liability

A State Legislature *does* have the power to define the elements of the criminal offenses recognized within its juris-

---

**19.** The offer of proof of the defendant's alleged mistake of fact does not alone establish that fact. Unless the jury, or trier of fact, accepts the proof, the defense must fail. Whether a defendant actually entertained the belief that the minor was 16 and, if so, its reasonableness, must depend upon the minor's appearance and the evidence, including the testimony of the defendant and other witnesses, concerning her behavior. Rather than place the burden of proof on the State, as I would do, under the Code, the burden is on the defendant not only to generate the issue, but to prove it by a preponderance of the evidence. *See* Model Penal Code, § 213.6, Comment at 416.

diction. *Liparota v. United States,* 471 U.S. 419, 424, 105 S.Ct. 2084, 2087, 85 L.Ed.2d 434, 439 (1985); *Smith v. California,* 361 U.S. 147, 150, 80 S.Ct. 215, 217, 4 L.Ed.2d 205, 209 (1959); *Lambert v. California,* 355 U.S. 225, 228, 78 S.Ct. 240, 242, 2 L.Ed.2d 228, 231 (1957); *McCallum v. State,* 81 Md. App. 403, 413, 567 A.2d 967, 971 (1990), *aff'd,* 321 Md. 451, 583 A.2d 250 (1991). *Cf.* Singer, *supra,* at 389. In fact, the Supreme Court has said: "There is wide latitude in lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition." *Lambert,* 355 U.S. at 228, 78 S.Ct. at 242, 2 L.Ed.2d at 231. Accordingly, a State legislature may constitutionally prescribe strict liability for public welfare offenses, discussed *supra,* committed within its boundaries. But "far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement." *United States v. United Gypsum Company,* 438 U.S. 422, 438, 98 S.Ct. 2864, 2874, 57 L.Ed.2d 854, 870 (1978) (citations omitted). *See Morissette,* 342 U.S. at 263, 72 S.Ct. at 250, 96 L.Ed. at 300 (mere omission of any mention of intent will not be construed as eliminating element from crime announced); *McCallum,* 321 Md. at 456, 583 A.2d at 252. Indeed, criminal offenses requiring no *mens rea* have a "generally disfavored status." *McCallum,* 321 Md. at 457, 583 A.2d at 252–253.

To recognize that a State legislature may, in defining criminal offenses, exclude *mens rea,* is not to suggest that it may do so with absolute impunity, without any limitation whatsoever. The validity of such a statute necessarily will depend on whether it violates any provision of the federal, *see Smith,* 361 U.S. at 152–53, 80 S.Ct. at 218, 4 L.Ed.2d at 211, or applicable state, *see Mahoney v. Byers,* 187 Md. 81, 87, 48 A.2d 600, 603 (1946) (holding that Article 20, Maryland Declaration of Rights, guaranteeing a defendant a trial of facts as "one of the greatest securities of the lives, liberties and estate of the people," voids a rule which substitutes an irrebuttable presumption for facts), constitution. It is ordinarily the due process clause, either of the federal constitution, or the corresponding provision of the appropriate state constitution, which

will determine its validity.[20] *See McMillan v. Pennsylvania,* 477 U.S. 79, 83, 85–86, 106 S.Ct. 2411, 2414–16, 91 L.Ed.2d 67, 74–76 (1986); *Liparota,* 471 U.S. at 424 n. 6, 105 S.Ct. at 2087 n. 6, 85 L.Ed.2d at 439 n. 6; *Patterson v. New York,* 432 U.S. 197, 202, 97 S.Ct. 2319, 2323, 53 L.Ed.2d 281, 287 (1977); *Smith,* 361 U.S. at 149, 80 S.Ct. at 217, 4 L.Ed.2d at 209; *Tot v. United States,* 319 U.S. 463, 467, 63 S.Ct. 1241, 1245, 87 L.Ed. 1519, 1524 (1943); *Chaplinski v. New Hampshire,* 315 U.S. 568, 570–71, 62 S.Ct. 766, 768–69, 86 L.Ed. 1031, 1034–35 (1942); *Manley v. Georgia,* 279 U.S. 1, 6, 49 S.Ct. 215, 217, 73 L.Ed. 575, 578 (1929); *McFarland v. American Sugar Refining Company,* 241 U.S. 79, 85–86, 36 S.Ct. 498, 501, 60 L.Ed. 899, 904 (1916); *Murray's Lessee v. Hoboken Land & Improvement Co.,* 59 U.S. (18 How.) 272, 276, 15 L.Ed. 372 (1855) (Due Process clause restricts legislative power arbitrarily to declare what is "due process of law"). *Mahoney,* 187 Md. at 87, 48 A.2d at 603; *Johns v. State,* 55 Md. 350, 363 (1881);

---

**20.** Article 20 of the Maryland Declaration of Rights, which has been held to be in *pari materia* with the Fourteenth Amendment's Due Process Clause, *see Sanner v. Trustees of Sheppard & Enoch Pratt Hosp.,* 278 F.Supp. 138 (D.Md.), *aff'd,* 398 F.2d 226 (4th Cir.), *cert. denied,* 393 U.S. 982, 89 S.Ct. 453, 21 L.Ed.2d 443 (1968), *rehearing denied,* 393 U.S. 1112, 89 S.Ct. 853, 21 L.Ed.2d 813 (1969) (citations omitted); *Home Utilities Co., Inc. v. Revere Copper and Brass, Inc.,* 209 Md. 610, 122 A.2d 109 (1955); *Goldsmith v. Mead Johnson & Co.,* 176 Md. 682, 7 A.2d 176 (1939), provides:

That the trial of facts, where they arise, is one of the greatest securities of the lives, liberties and estate of the people.

*See also* Article 24 of the Maryland Declaration of Rights, which provides:

That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land.

The phrase "Law of the land" has been held to be equivalent to "due process" of the law, as used in the 14th Amendment to the United States Constitution. *In re Easton,* 214 Md. 176, 187–89, 133 A.2d 441, 447–48 (1957). In that regard, therefore, Supreme Court cases on that subject are practically direct authority for the meaning of the Maryland provision. *Northampton Corp. v. Wash. Sub. San. Comm'n,* 278 Md. 677, 686, 366 A.2d 377, 383 (1976). The essential elements of due process as it relates to a judicial proceeding are notice and opportunity to defend. *Accrocco v. Splawn,* 264 Md. 527, 534, 287 A.2d 275, 278–80 (1972).

McLain, *Maryland Practice,* "Irrebuttable Presumptions and Constitutional Limitations In Criminal Cases," § 303.1. *See generally* L. Tribe, *American Constitutional Law,* Ch. 10 (2nd 1988).

Due process, whether pursuant to that clause of the Fourteenth Amendment [21] or the corresponding clause in a state constitution, protects an accused from being convicted of a crime except upon proof beyond a reasonable doubt of every element necessary to constitute the crime with which the accused is charged. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970); *Mullaney v. Wilbur,* 421 U.S. 684, 685, 95 S.Ct. 1881, 1883, 44 L.Ed.2d 508, 512 (1975). It thus implicates the basic characteristics, if not the fundamental underpinnings, of the accusatorial system. *In re Winship,* 397 U.S. at 364, 90 S.Ct. at 1072–73, 25 L.Ed.2d at 375. *See* Gilbert & Moylan, *supra,* § 45.0, 589–590.

Under our system of justice, a person charged with a crime is presumed innocent until he or she is found guilty beyond a reasonable doubt. That means that he or she may not be found guilty until the State has produced evidence sufficient to convince the trier of fact, to the required extent, of that person's guilt. Moreover, although not required to do so, the defendant may present a defense, in which event the evidence the defendant produces must be assessed along with that of the State in determining whether the State has met its burden. The State's burden is not reduced or changed in any way simply because the defendant elects not to interpose a defense. In those cases, the defendant may still seek to convince the trier of fact that the State has not met its burden of proof by arguing that the inferences to be drawn from the

21. The due process clause of the Fourteenth Amendment of the United States Constitution guarantees that no State shall "deprive any person of life, liberty or property without due process of law." This clause has been interpreted as "a restraint on the legislative as well as on the executive and judicial powers of the government and [it] cannot be ... construed as to leave Congress free to make any process 'due process' of law by its mere will." *Murray's Lessee v. Hoboken Land & Improvement Co.,* 59 U.S. (18 How.) 272, 276, 15 L.Ed. 372 (1855). L. Tribe, *American Constitutional Law* § 10–7, at 664 (2nd ed. 1988).

evidence the State has produced simply is not sufficient to support guilt.

Irrebuttable presumptions are rules of substantive law. McLain, §§ 301.1, 303.1; Gilbert & Moylan, supra, § 45.12. *See also* 9 J. Wigmore, *Evidence,* § 2492 at 307–08, "Conclusive Presumptions" (Chadbourne Rev.1981), in which it is explained:

Wherever from one fact another is said to be conclusively presumed, in the sense that the opponent is absolutely precluded from showing by any evidence that the second fact does not exist, the rule is really providing that where the first fact is shown to exist, the second fact's existence is wholly immaterial for the purpose of the proponent's case; and to provide this is to make a rule of substantive law and not a rule apportioning the burden of persuading as to certain propositions or varying the duty of coming forward with evidence.

Thus, irrebuttable presumptions help to define the issues pertinent to a particular kind of case, McLain § 303.1 at 241, and, in that sense, because the substantive law determines the issues to be proved, govern the admission of evidence, thus establishing the perimeters of relevance and materiality. *Id.,* § 301.1 at 183. They may be statutory, McLain, § 303.1 at 182 n. 2, or have their origin in the common law. *See In re Davis,* 17 Md.App. 98, 100 n. 1, 104, 299 A.2d 856, 858 n. 1, 860 (1973); *Miller v. Graff,* 196 Md. 609, 620, 78 A.2d 220, 224 (1951). Accordingly, at common law, children under the age of 7 were, and still are, irrebuttably presumed to be incapable of forming criminal intent, *Davis,* and children under 4 years of age, were, and are, irrebuttably presumed to have been incapable of contributory negligence. As a matter of substantive law, therefore, children of those ages could not then, and may not now, be prosecuted under the criminal law, be sued for negligence, or held to be contributorially negligent. Similarly, section 463(a)(3) reflects the irrebuttable presumption that a child under 14 years of age is incapable of consenting to sexual intercourse. *See Rau,* 133 Md. at 613–616, 105 A. at 867.

**616**

When the Legislature enacts a strict liability crime, *i.e.*, promulgates a statute which excludes as an element, the defendant's mental state, it essentially creates an irrebuttable presumption that the defendant's mental state, *i.e.*, knowledge or intent, is irrelevant. *See* McLain, § 301.1 at 183. That is the case with regard to statutory rape. Notwithstanding that it chooses to accomplish that result by defining the crime, rather than by means of an express presumption, which relieves the State of its burden of proof, the fact remains that the result is exactly the same: anyone who has sexual relations with a female under the age of 14 is treated as if he knew that she was under 14 and so intended to have such relations with a 14 year old female. It thus relieves the State of any duty to produce relevant evidence to prove the defendant's mental state, that he knew the prosecutrix's age, and prevents the defendant from proving the contrary. Because the irrebuttably presumed fact does not follow inextricably from the fact of sexual relations with a 14 year old, its use to relieve the State of its burden of proof to prove the defendant's intent in that regard runs afoul of the due process clause of the Fourteenth Amendment.

Irrebuttable, mandatory, presumptions have long been disfavored and held to be violative of due process. *Vlandis v. Kline*, 412 U.S. 441, 446, 453, 93 S.Ct. 2230, 2233, 2237, 37 L.Ed.2d 63, 68, 73 (1973), and cases therein cited. One of the bases for the disfavor is that they may conflict with the overriding presumption of innocence which the law accords to the accused and invade the fact finding process, which, in a criminal case, is the exclusive province of the jury. *See Carella v. California*, 491 U.S. 263, 268, 109 S.Ct. 2419, 2421, 105 L.Ed.2d 218, 223 (1989) (Scalia, J. concurring) (jury instructions relieving the prosecution of its burden of proof violate a defendant's due process rights; whether he or she is believed ordinarily is a question of fact for the jury to decide, not one of law for the Legislature). The more usual reason for disfavoring irrebuttable presumptions, however, is that the fact conclusively presumed "is not necessarily or universally true in fact," *Vlandis*, 412 U.S. at 452, 93 S.Ct. at 2236, 37

L.Ed.2d at 71, and, so, excusing the proponent of that fact from having to establish it renders the statute "arbitrary, illegal, capricious and hence unconstitutional." *Mahoney,* 187 Md. at 87, 48 A.2d at 603.[22] This is especially so when the presumed fact bears little or no relation to the statute's expressed objective. *Vlandis,* 412 U.S. at 448–49, 93 S.Ct. at 2234–35, 37 L.Ed.2d at 69–70. Nor, "where there are other reasonable and practicable means of establishing the pertinent facts on which the State's objective is premised," *id.* at 451, 93 S.Ct. at 2236, 37 L.Ed.2d at 71, may a conclusive presumption, not otherwise appropriate, be rendered acceptable or, because it is a matter of "administrative ease and certainty," *id.,* the State's burden reduced.

The statute invalidated in *Vlandis* conclusively presumed that the applicant's residence when he applied for admission to a Connecticut University remained his residence throughout his college years. At issue in *Mahoney* was Rule 146 of the Maryland Racing Commission, the pertinent portion of which provided:

"(d) If the Commission finds from analysis of the saliva or urine, or blood taken from a horse on the day of a race in which the horse ran, or from other competent evidence, that any drug had been administered to the horse within forty-eight (48) hours before the race, the trainer shall be subject to the penalties prescribed in subsection (e) hereof, whether or not he administered the drug, or knowingly or carelessly

---

**22.** In *Johns v. State,* 55 Md. 350, 359–63 (1881), cited by this Court in *Mahoney v. Byers,* 187 Md. 81, 87, 48 A.2d 600, 603 (1946), a statute requiring the certificate of the Comptroller to be received as *prima facie* evidence of the defendant's defalcation was upheld. In doing so, however, the Court was persuaded by the fact that the evidence was only *prima facie:*

So far as this case is concerned, it may readily be conceded, that a statute that should make evidence conclusive, which was not so of its own nature and inherent force, and by that means preclude the party from the truth, would be simply void. But the evidence furnished by the certificate only being prima facie in its effect, the traverser was left at full liberty to repel and overcome that prima facie effect, by evidence that ought to have been within his own control.

*Id.* at 362–63.

permitted it to be administered. The fact that the analysis shows the presence of a drug shall be conclusive evidence either that there was knowledge of the fact on the part of the trainer or that he was guilty of carelessness in permitting it to be administered."

187 Md. at 83–84, 48 A.2d at 602. *See also United States v. Wulff,* 758 F.2d 1121, 1122 (6th Cir.1985) (interpreting the Migratory Bird Treaty Act, a strict liability statute); *Guest,* 583 P.2d at 838–39 (holding Alaska's statutory rape statute unconstitutional as a violation of due process).

*Smith, Tot,* and *Lambert* are also apposite. The ordinance at issue in *Smith* made it unlawful "for any person to have in his possession any obscene or indecent writing, [or] ... books [i]n any place of business where ... books ... are sold or kept for sale." 361 U.S. at 148, 80 S.Ct. at 216, 4 L.Ed.2d at 208. It did not require proof of any mental element on the part of the defendant. *Id.* at 149, 80 S.Ct. at 216, 4 L.Ed.2d at 208. Noting, but rejecting, the State's attempt to "analogize this strict liability penal ordinance to familiar forms of penal statutes which dispense with any element of knowledge on the part of the person charged, food and drug legislation being a principal example," the Court observed (*id.* at 152–153, 80 S.Ct. at 218, 4 L.Ed.2d at 211 (citation omitted)):

The usual rationale for such statutes is that the public interest in the purity of its food is so great as to warrant the imposition of the highest standard of care on distributors— in fact an absolute standard which will not hear the distributor's plea as to the amount of care he has used. ... His ignorance of the character of the food is irrelevant. There is no specific constitutional inhibition against making the distributors of food the strictest censors of their merchandise, but the constitutional guarantees of the freedom of speech and of press stand in the way of imposing a similar requirement on the bookseller.

In *Lambert,* a Los Angeles ordinance required convicted felons who remained in the city for more than five days to

register with the police. It did not contain any "knowledge" or *mens rea* requirement. The Supreme Court held:

actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance can stand.... Where a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process. Were it otherwise, the evil would be as great as it is when the law is written in print too fine or in a language foreign to the community.

355 U.S. at 229–30, 78 S.Ct. at 243–44, 2 L.Ed.2d at 232.

Similarly, in *Tot*, holding that section 2(f) of the Federal Firearms Act violated the Due Process Clauses of the Fifth and Fourteenth Amendment, 319 U.S. at 467, 63 S.Ct. at 1245, 87 L.Ed. at 1524, the Court overturned the defendant's conviction. It held that Congress had no power to create the presumptions contained in that section to wit: that, from the defendant's prior conviction of a crime of violence and his present possession of a firearm, it is conclusively presumed that the firearm was received in interstate or foreign commerce, after the effective date of the statute. *Id.* at 467, 63 S.Ct. at 1245, 87 L.Ed. at 1524. Rejecting the Government's argument that it was entitled to the presumption because the defendant had the better means of information, the Court said (*id.* at 469, 63 S.Ct. at 1246, 87 L.Ed. at 1525):

But the argument proves too much. If it were sound, the legislature might validly command that the finding of an indictment, or mere proof of the identity of the accused, should create a presumption of the existence of all the facts essential to guilt. This is not permissible. (footnote omitted).

In the case *sub judice*, by consciously and intentionally excluding from section 463(a)(3) any requirement that the defendant's knowledge of the victim's age be proven, the Legislature has relieved the State of that obligation; without that legislation, of course, the State's burden would have

included proving, at the very least, that the defendant knew the prosecutrix's age. On the issue of the defendant's intent, section 463(a)(3) only requires proof of the victim's age and its differential with that of the defendant. As such, once those facts have been proven, it is conclusively established that the defendant's intent was to have sexual relations with a girl of the proscribed age.[23] As we have seen, not requiring proof of the defendant's intent has been accomplished by so defining the crime, not by means of an express presumption. Again, that is of no real consequence, however. By defining the crime, the Legislature prescribes what must be proven. In other words, by that process, it has determined what the rule of substantive law will be—by defining the crime so as to exclude proof of knowledge or intent, the Legislature naturally precludes the admission of any evidence bearing on the element, the proof of which it has excused. In so doing, it has made that element—intent or knowledge of the victim's age— irrelevant to the definition of the crime and, hence, irrebuttable. Wigmore, § 2492 at 307–08. It follows, therefore, that, once the other elements are proven, the defendant's knowledge or intent is necessarily established as well. It does not necessarily follow, however, that simply because the victim is 13 years old, the defendant had knowledge of her age or intended to have sexual relations with a 13 year old girl. He may have had knowledge or intent, to be sure, but, by the same token, he may not have. The defendant should have been permitted to present evidence on the issue.

In her treatise, Professor McLain, echoing the authorities, offered an example of the Legislature redefining a crime to exclude an element, without relying on an irrebuttable presumption. She referred to Maryland Code (1957, 1992 Repl.

---

**23.** To be sure, the statute is based on another irrebuttable presumption: that the victim is incapable of consenting. My argument is not directed at that presumption, *albeit* it is, in my opinion, logically, also fair game for constitutional challenge. See n. 26: *see Hernandez,* 61 Cal.2d at 534 n. 3, 39 Cal.Rptr. at 364 n. 3, 393 P.2d at 676 n. 3. It is certainly not universally true, or even almost always true, that a minor 13 years of age is incapable of giving meaningful consent. *See* note 25 *infra.*

Vol.) Art. 27, § 286A [24] which punishes a defendant for possession of certain large amounts of drugs, without regard to intent. That is not comparable to the case *sub judice*. While, under the statute, it is true that the possession of the proscribed drugs is a crime without proof of the intent with which they are possessed, the State is not relieved of its responsibility of proving both that they were brought into Maryland and that the possession was a knowing possession. *Dawkins v. State*, 313 Md. 638, 547 A.2d 1041 (1988). In the case of statutory rape all aspects of the defendant's knowledge, save proof of the intercourse itself, has been rendered, by definition, irrelevant and, so, off limits for the trial. That is, I repeat, by no means comparable.

The critical issue in a statutory rape case is "the age of the rape victim." That is true because the victim's age serves two related, but distinct purposes: (1) it establishes the victim's capacity to consent and (2) it represents notice to a defendant of proscribed conduct. The Maryland statute seeks irrebuttably to presume not only that the victim could not consent by virtue of age, but also that, when a defendant engages in

---

**24.** § 286A. *Bringing into State in excess of certain amounts.*

(a) A person who brings into this State any of the following controlled dangerous substances which it is unlawful for that person to possess, in the amounts indicated, upon conviction, is subject to the penalty provided in subsection (b) of this section:

(1) 100 pounds or greater of marijuana;

(2) 28 grams or greater of cocaine or any mixture containing 28 grams or greater of cocaine;

(3) 4 grams or more of morphine or opium or any derivative, salt, isomer, or salt of an isomer of morphine or opium;

(4) 1,000 dosage units of lysergic acid diethylamide or any mixture containing the equivalent of 1,000 dosage units of lysergic acid diethylamide;

(5) 28 grams or more of phencyclidine in liquid or powder form or 112 grams or more of any mixture containing phencyclidine;

(6) 1,000 dosage units or more of methaqualone; or

(7) 28 grams or more of methamphetamines or any mixture containing 28 grams or more of methamphetamine.

(b) A person convicted of violating subsection (a) of this section is guilty of a felony and may be fined not more than $50,000 or imprisoned for not more than 25 years, or both fined and imprisoned in the discretion of the court.

sexual relations with a minor under the age of 14, he has notice of that fact. Assuming that, based on the victim's age, the Legislature could legitimately exclude consent as an element of the crime,[25] it absolutely should not be able to excuse the State from its obligation to prove the defendant's knowledge of the victim's age or prevent the defendant from producing evidence on that issue. No matter how forcefully it may be argued that there is a rational relationship between the capacity to consent and the age the Legislature selected, given the tremendous difference between individuals, both in appearance and in mental capacity, there can be no such rational relationship between the proof of the victim's age and the defendant's knowledge of that fact.[26] *See Tot,* 319 U.S. at 469, 63 S.Ct. at 1245-46, 87 L.Ed. at 1525. *Mahoney,* 187 Md. at 87, 48 A.2d at 603.

The notice element of the crime of statutory rape is different from the consent element, in any event. A defendant who has knowledge that a victim has consented, in fact, to sexual relations, whether the consent is effective or not, is not thereby placed on notice as to the victim's age. Knowledge of

---

**25.** It is at least arguable that incapacity to consent based on an irrebuttable presumption cannot withstand constitutional scrutiny. For statutory rape to comport with due process, a close correlation between the age of consent specified in the statute and the purpose of the statute—to render minors incapable of consenting to sexual intercourse—is required. It is not necessarily true that a statutory age of consent is a reliable indicator of the capacity of any member of the protected class to understand the nature and consequences of sexual intercourse. *See Hernandez,* 61 Cal.2d at 534 n. 3, 39 Cal.Rptr. at 364 n. 3, 393 P.2d at 676 n. 3; *see also* Myers, *supra,* at 121. Given the variety of cultural factors that can influence a child's acquisition of sexual awareness, it is unlikely that any arbitrary age could do so. *Rita Eidson, Note, The Constitutionality of Statutory Rape Laws,* 27 UCLA L.Rev. 757, 808 (1980). While it is reasonable to presume that very young children are naive and incapable of understanding the nature of sexual contact, and, thus, of consenting, an older adolescent's incapacity to consent on this basis seems unreasonable in light of pervasive contemporary sexual mores. *See Hernandez,* 61 Cal.2d at 534 n. 3, 39 Cal.Rptr. at 364 n. 3, 393 P.2d at 676 n. 3; *see also* Note, *supra,* at 808–809.

**26.** Indeed, it would appear that the irrebuttable presumption of notice is dependent on another irrebuttable presumption, that a person of a certain age cannot consent.

consent simply does not equate with knowledge of age, just as intent to engage in sexual relations does not reveal, without more, with whom. Moreover, it is not a crime to engage in sexual relations with a minor who is at least 16 years old; it may be morally wrong, in the minds of most Americans, but it is not a crime. It is only a crime if the defendant engages in such relations with a minor under a specified age, *i.e.,* 14, as in section 463(a)(3), or 14 or 15, as in section 464C. But even when the act engaged in is necessarily a crime, *e.g.* possession of contraband, knowledge of the illegality—that the contraband is knowingly possessed—is still required. *See Dawkins v. State,* 313 Md. 638, 547 A.2d 1041 (1988). Consequently, where the activity would be legal or, at least, not illegal, but for the ages of the participants, at the very least, the defendant's knowledge of the victim's age must be proven. Otherwise, a defendant who does not know he is acting illegally could be convicted.

Moreover, there is precedent that a felony statute which prescribes substantial penalties and conviction of which will subject the defendant to significant social stigma, violates due process unless it requires the State to prove intent or knowledge, *Wulff,* 758 F.2d at 1125; *Holdridge v. United States,* 282 F.2d 302 (8th Cir.1960); *United States v. Heller,* 579 F.2d 990 (6th Cir.1978); *Guest,* 583 P.2d 836 (Ala.1978).[27]

---

**27.** As discussed supra, there are several critical distinctions between imposing strict criminal liability for public welfare offenses and felonies. First, there is no specific constitutional provision against imposing strict criminal liability for public welfare offenses. *See Smith,* 361 U.S. at 152, 80 S.Ct. at 218, 4 L.Ed.2d at 211; Singer, *supra* at 389. Second, such statutes which are designed to protect the health, safety, and welfare of the community at large, carry penalties that are not great and involve little or no stigma. *See* Tonry, *supra,* at 106.

On the other hand, there are constitutional limits on a legislature's power to define the elements of more serious criminal offenses like felonies. *McMillan,* 477 U.S. at 85, 106 S.Ct. at 2415, 91 L.Ed.2d at 75; *Wulff,* 758 F.2d at 1125; Singer, *supra,* at 397. Second, the greater social stigma attached to imposing criminal liability in serious felony cases requires an element of blameworthiness or culpability. *See* Singer, *supra,* at 404–405. Third, the severe penalties in serious felony cases merit a culpability requirement. *See Holdridge,* 282 F.2d 302.

In *Wulff*, the defendant was charged with violation of the felony provisions of the Migratory Bird Treaty Act, 16 U.S. § 707(b). On motion by the defendant, the trial court dismissed the charges, holding that the provisions under which he was charged violated due process, no proof of intent being required. On appeal by the Government, the Court of Appeals affirmed. 758 F.2d at 1122. That court perceived the issue to be "whether the absence of a requirement that the government prove some degree of scienter violates the defendant's right to due process." In resolving that issue, it observed, relying on *Holdridge, supra*, that "a felony conviction under the act does not require proof of scienter; the crime is not one known to the common law, and . . . the felony penalty provision is severe and would result in irreparable damage to one's reputation." *Id.* The court then held:

> We are of the opinion that in order for one to be convicted of a felony under the MBTA, a crime unknown to common law which carries a substantial penalty, Congress must require the prosecution to prove the defendant acted with some degree of scienter. Otherwise, a person acting with a completely innocent state of mind could be subjected to a severe penalty and grave damage to his reputation. This, in our opinion, the Constitution does not allow.

*Id.* at 1125. *See Holdridge*, 282 F.2d at 310, in which it is said:

> [W]here a federal criminal statute omits mention of intent and where it seems to involve what is basically a matter of policy, where the standard imposed is, under the circumstances, reasonable and adherence thereto properly expected of a person, where the penalty is relatively small, where conviction does not gravely besmirch, where the statutory crime is not taken over from the common law, and where congressional purpose is supporting, the statute can be construed as one not requiring criminal intent. The elimination of this element is then not violative of the due process clause.

A similar result was reached by the Supreme Court of Alaska in *Guest*, involving a charge of statutory rape. Significantly, having held that, under its precedents, a reasonable mistake of age defense was permitted, the court submitted:

> [W]here a particular statute is not a public welfare type of offense, either a requirement of criminal intent must be read into the statute or it must be found unconstitutional.... Since statutes should be construed where possible to avoid unconstitutionality, it is necessary here to infer a requirement of criminal intent.

*Id.* at 839 (citations and footnote omitted).

Similarly, the prosecution of statutory rape in Maryland necessarily brings into conflict the State's interests in protecting minors and defendants' due process rights because section 463(a)(3) operates " 'to exclude elements of knowledge and diligence from its definition,' " *Ransom*, 942 F.2d at 776, quoting *Lambert*, 355 U.S. at 228, 78 S.Ct. at 242, 2 L.Ed.2d at 231, and, thus, removes reasonable ignorance of the girl's age and consequent lack of criminal intent as a defense. The failure of section 463(a)(3) to require proof of a culpable mental state conflicts both with the substantive due process ideal requiring that defendants possess some level of fault for a criminal conviction of statutory rape and the procedural due process ideal requiring that the prosecution overcome the presumption of innocence by proof of the defendant's guilt beyond a reasonable doubt. Notwithstanding the maxim that criminal statutes dispensing with the intent requirement and criminal offenses requiring no *mens rea* have a "generally disfavored status," the rationale of parts V and VI of the majority opinion is that the legislature has absolute authority to create strict liability crimes. For the reasons reviewed, I do not agree. On the contrary, I believe that due process both under the Fourteenth Amendment and under the Declaration of Rights, precludes strict criminal liability for statutory rape. Interpreting section 463(a)(3) as the majority does has the effect of largely relieving the State of its burden of proof and burden of persuasion. By making the defendant's intent, and, hence, blameworthiness, irrelevant, the Legislature has

made inevitable, the petitioner's conviction. Moreover, upon conviction of the felony offense of statutory rape under section 463(a)(3), in addition to a substantial penalty of up to 20 years imprisonment, a defendant's reputation will be gravely besmirched. Where there is no issue as to sexual contact, which is more likely than not to be the case in statutory rape prosecutions, proof of the prosecutrix's age is not only proof of the defendant's guilt, it is absolutely dispositive of it and, at the same time, it is fatal to the only defense the defendant would otherwise have. So interpreted, section 463(a)(3) not only destroys absolutely the concept of fault, but it renders meaningless, in the statutory rape context, the presumption of innocence and the right to due process.

I respectfully dissent.